■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MELVIN DE JESUS, Appellant. — Judgment, Supreme Court, New York County (Rothwax, J., on plea and sentence; Alexander, J., on motion to suppress), rendered May 3, 1982, convicting defendant of criminal possession of a weapon in the third degree (Penal Law, § 265.02) and sentencing him to a term of imprisonment of

one year, is affirmed. Here the suppression court found that "[g]iving weight to the officer's experience with handguns and his knowledge of the high incidence of robberies and other crimes involving handguns in this area, the court accepts and credits his testimony that he 'reasonably suspected' that the outline of the object observed in the package was the butt of a gun." The officer had testified that the outline of the object in the package (a plastic bag) looked to him like the butt of a gun. As the defendant passed the marked police car he transferred the package to his right hand away from the officer. The officer saw the defendant place the package on the back deck of the defendant's station wagon. The police officer was justified in asking the defendant, as he did, what was in the bag. In the light of his reasonable suspicion that the bag contained a gun, the officer did not have to be satisfied with the defendant's reply "my tools" — an answer which the officer on the basis of his observation believed to be false. For the officer to have then turned his back and walked away would have unreasonably endangered both the officer and the public. The officer reached into the open flat deck of the station wagon and touched the bag, and immediately recognized that the bag contained the barrels of a double-barreled shotgun. The officer then arrested the defendant. (On examination the bag was found to contain a disassembled sawed-off shotgun — twin barrels, a stock, another piece of equipment which fits under the stock and connects to the trigger mechanism, and two shotgun rounds.) The bag and the gun were clearly within the "grabbable" area of the defendant, and touching the bag fulfilled the same function as an officer's limited "pat-down" search for weapons. "Courts simply must not, in this difficult area of street encounters between private citizens and law enforcement officers, attempt to dissect each individual act by the policemen; rather, the events must be viewed and considered as a whole, remembering that reasonableness is the key principle when undertaking the task of balancing the competing interests presented." (*People v Chestnut,* 51 NY2d 14, 23.) Considering the events as a whole, the officer's actions were reasonable and legal. Concur — Kupferman, J. P., Silverman and Kassal, JJ.

Carro and Fein, JJ., dissent in a memorandum by Carro, J., as follows: The judgment should be vacated, the motion to suppress should be granted and the indictment should be dismissed. The majority analogizes this case to a "limited 'pat-down' search for weapons", justifiable because "[f]or the officer to have then turned his back and walked away would have unreasonably endangered both the officer and the public." A brief examination of the events of the night in question, and the trial court's findings of fact, however, reveals no such justification. Shortly before midnight on January 27, 1981 two officers in a marked police car observed Melvin De Jesus walking on 117th Street in Manhattan, from Lexington toward Third Avenue. Appellant was carrying a bag in his left hand and as he approached his station wagon he shifted the bag to his right hand. The arresting officer testified that he was able to perceive the shape of a handgun's stock in the bag. The officer then pulled his vehicle adjacent to appellant's vehicle and got out. Simultaneously, De Jesus opened the back of his station wagon and, with his left hand, placed the bag on the left-hand side of the car's rear deck, covering it with a rag. The officer then asked what was in the bag, to which appellant responded, "my tools." Unsatisfied with this response, the officer testified that he then reached into the car and grabbed the bag, feeling the disassembled double-barrel shotgun at issue here. As he grabbed appellant, the contents of the bag fell onto the hood of the radio car. He placed appellant under arrest, assembled the shotgun and then transported appellant to the station house. At the suppression hearing, a demonstration was conducted in which the police attempted to show how the

stock of the gun was easily discernible. At that hearing the court noted: "I would suggest in spite of the officer's experience that there is considerable doubt in this Court's mind as to his ability to distinguish the shape [of what] he saw". In its written opinion the trial court wrote: "Even if the court were to fully credit the officer's assertion that the shape of the package was distinctively peculiar to that of the stock of a handgun, an extremely dubious hypothesis as evidenced by the courtroom demonstration, the record is totally devoid of any proof sufficient to establish the existence of such exigent circumstances as would justify the further intrusive action of reaching into the vehicle and extracting the bag. Neither the officer's recital of his observations nor his description of the conditions then present, indicate any reasonable basis upon which he could conclude that he had any fear for his safety." I believe the majority today should defer to the trial court's finding of a lack of exigent circumstances in this case. Further, this court should follow the trial court's finding that, although the officer may have "reasonably suspected" there was a gun in the bag, the search of the car was unwarranted: " 'Was there evidence of probative worth that there had been a pretext stop and frisk or that the police were otherwise motivated by improper or irrelevant purpose?' (*People v Prochillo,* 41 NY2d 759, 761-762). On this record, the court is constrained to resolve this inquiry unfavorably to the police. While the evidence provides some proof of a describable object and describable conduct of the defendant that might be said to provide a basis for a 'reasonable suspicion' that defendant had a gun in his possession, it does not establish that the 'manner of the officer's approach to the defendant and the seizure of the gun from him (was) reasonable in the circumstances.' Giving weight to the officer's experience with handguns and his knowledge of the high incidence of robberies and other crimes involving handguns in this area, the court accepts and credits his testimony that he 'reasonably suspected' that the outline of the object observed in the package was the butt of a gun. Nevertheless, his subsequent conduct in reaching into the station wagon and seizing the package, absent any reasonable basis upon which to ground a fear for his safety, was excessively intrusive and unreasonably interfered with the defendant's right to privacy and personal security." Had the trial court stopped at this juncture, it would have suppressed the weapon. Instead, it applied the doctrine of inevitable discovery. We are in agreement that the "inevitable discovery" doctrine has no application to these facts. However, in order to uphold the trial court's denial of the suppression motion, the majority effectively reverses the trial court's factual findings, substituting its own. This is improper. The cases relied upon by the majority (and the People in their brief), *People v Chestnut* (51 NY2d 14), *People v Benjamin* (51 NY2d 267), and *People v Rivera* (78 AD2d 327), are inapposite to the instant case. In each of these cases the officer's actions were predicated upon knowledge of criminal activity afoot and the suspicious actions of the defendants. In *People v Chestnut* (*supra*), the police were observing the suspect when they received a radio call describing defendant's companion, Hernandez, as the perpetrator of an armed robbery in the immediate area. During their surveillance the officers had observed Hernandez handing something to defendant. Thus, the Court of Appeals found that the officer had reasonable suspicion sufficient to stop and inquire. When the officer asked where the gun was, the defendant pointed to his pocket and responded, "its right here." That the officer questioned defendant while holding him at gunpoint, face down on the ground, was seen to be justified by the circumstances endangering the officer's safety: he approached three people, probably armed, knowing his request for reinforcements had been unsuccessful. In *People v Benjamin* (*supra*) the officers had received a radio call relating an

anonymous tip of men with guns at a specific location. When the police arrived there were some 30 people gathered at the corner. Defendant, upon seeing police, backed away and reached with both hands behind his back and under his jacket. The Court of Appeals found that the anonymous tip coupled with defendant's suspicious actions, and the need to protect the safety of the police and the public, justified the stop and frisk. In *People v Rivera (supra)*, I dissented, but even assuming that the majority decision reached there was correct, that case does not apply here. In *Rivera* there had been several youth gang fights in recent weeks. The officers had received an anonymous tip about an expected gang fight, later confirmed by defendant. Rivera was thought to be acting suspiciously, keeping his hand in his pocket on a hot night. When he removed his hand, the jacket was weighted down and a bulge, but not the outline of a gun, was observed. After a conversation with the defendant, the officer reached down and felt the outside of the pocket, discovering the gun. It was the policeman's prior knowledge and the circumstances of a hot August night that purportedly justified the action. During the conversation defendant mentioned that the rival gang would be bringing guns. Thus, it was considered that the officer was correct in taking "the precautionary measure of touching the outside of defendant's jacket." (78 AD2d, at p 330.) In this case, the officer had no prior knowledge of criminal activity afoot, appellant's actions were not inherently suspect and the trial court expressly found the absence of exigent circumstances. Furthermore, the officer's conduct went beyond a simple stop and frisk and was a search of the vehicle without probable cause. Therefore, the weapon should have been suppressed. This case is much more like *People v Carrasquillo* (54 NY2d 248, revg this ct 75 AD2d 784 [Sandler, J., dissenting]). In that case two police officers observed defendant walking down the street with a shopping bag. As the officer driving stared at Carrasquillo their eyes met and defendant then turned the corner rather quickly. With this behavior as their justification, the two policemen got out and asked defendant (p 251) " '[w]hat do you have in the bag?' " "[T]he defendant, rather than evade or refuse to answer the questions, as was his right (*People v Howard*, 50 NY2d 583, 586, *supra*), elected to respond with alacrity and on his own proffered the contents of the bag for inspection." (54 NY2d, at p 253.) The police nonetheless arrested the man because the radio in the bag was a Zenith, not a Sylvania, as defendant had stated. When asked if the articles were his Carrasquillo replied that he found them in the garbage a few blocks away. Judge Fuchsberg's decision points out (p 252) that all of the defendant's actions amounted to nothing more than " 'innocuous behavior' " (quoting from *People v De Bour*, 40 NY2d 210, 216). "The defendant did not attempt to flee; rather, he was most co-operative and most responsive." (54 NY2d 248, 254.) So, too, in the case at bar, the actions of defendant were totally innocuous. Granting the police the right to stop and inquire (*People v Carrasquillo*, 54 NY2d 248, 253, 255, *supra*), further intrusion was totally unjustified — it is "impossible to say that the picture was one more consistent with guilt than with innocence." "By no means do [the defendant's actions] reach the level of 'reasonable suspicion', which this court in *De Bour* [40 NY2d 210, 216, *supra*] indicated was essential to justify an encounter 'involving actual or constructive restraint'." (54 NY2d, at p 252.) In sum, because I give great weight to the trial court's findings and agree with the majority that the "inevitable discovery" doctrine is legally inapplicable, I believe this court errs in affirming the conviction.