■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JERRY DELMON-ICO, Appellant. — Appeal by defendant from a judgment of the Supreme Court,

Queens County (Leahy, J.), rendered January 13, 1982, convicting him of attempted criminal possession of a weapon in the third degree, upon his guilty plea, and imposing sentence. The appeal brings up for review the denial of defendant's motion (Tsoucalas, J.), to suppress physical evidence and an incriminating statement. Judgment reversed, on the law and the facts, plea of guilty vacated, motion to suppress granted solely with respect to the holster found on defendant's person and the statement given by the defendant to the police, and matter remitted to the Supreme Court, Queens County, for further proceedings. On May 21, 1981, at approximately 7:30 P.M., police officer Telinbacco received a radio run of a "burglary in progress * * * possible man with a gun" at 104-36 117th Street in Queens, N. Y. Upon reaching that address in his marked patrol car, he observed defendant in the driveway, gesturing with his hands and arguing with a man on the stoop about 10 feet away. According to the officer, the defendant appeared a little "restricted" and "self-conscious * * * in his motioning". The officer stepped between the two men and asked them to quiet down. Defendant brushed into the officer, and the officer pushed him back. Thereupon, the officer patted the defendant down, because he was allegedly concerned with his physical safety. In his direct testimony, the officer testified that during the pat down, he felt the shape of a gun, but on cross-examination he testified that he only felt the shape of a holster. He then unzippered defendant's jacket, and saw an empty shoulder holster. He removed the holster, placed the defendant against the wall under the guard of another police officer and proceeded to search the area. In the nearby shrubbery he found a gun. He thereupon placed defendant under arrest for possession of a gun and transported him to the precinct, where, shortly thereafter, defendant gave an incriminating statement after receiving and waiving his *Miranda* rights. The defendant called his girlfriend's sister as a witness in his behalf. She testified that she was conversing with defendant on May 21, 1981, at about 6:10 P.M., in front of her house, when a patrol car pulled up. One of the officers told defendant "to go to the side and stay over there". The officer then patted defendant down, opened his coat, turned him around, and removed the coat. She saw that defendant was wearing an empty shoulder holster. The officer directed his brother officers, who were also on the scene, to "look for the gun". Several minutes later, an officer came from the side of the bushes, with a gun in his hand. He told defendant "if this fits, you're arrested". The officer put the gun into defendant's holster and "that was it". It is beyond cavil that a police officer who possesses a reasonable suspicion that a particular person has committed, is committing, or is about to commit, a felony or misdemeanor, may forcibly stop and detain that person temporarily for questioning (CPL 140.50, subd 1; *Terry v Ohio,* 392 US 1; *People v De Bour,* 40 NY2d 210). As a corollary to the police officer's right to temporarily detain for questioning, the officer may conduct a frisk of the person if he reasonably suspects that he is in danger of physical injury by virtue of the detainee being armed (CPL 140.50, subd 3; *People v De Bour, supra,* p 223). Reasonable suspicion that a violation of law has been or is about to be committed "must be more than subjective; it should have at least some demonstrable roots. Mere 'hunch' or 'gut reaction' will not do" (*People v Sobotker,* 43 NY2d 559, 564). Even viewing the evidence adduced at the suppression hearing in the light most favorable to the People, it is clear that the officer herein did not possess the requisite predicate to forcibly detain and frisk the defendant. The officer received a radio run concerning a burglary and a man with a gun. Concededly, no description was furnished with that radio message. Upon the officer's arrival at the scene of the alleged burglary several minutes later, defendant was found standing in the driveway of the subject premises arguing with a

man on the stoop, which was unlikely behavior for a burglar. The officer did not conduct any preliminary questioning of defendant, or the man on the stoop, but instead, forcibly detained and frisked defendant based on the vague assertion that defendant appeared somewhat restricted and self-conscious in his hand movements and the fact that defendant brushed into him while arguing with the man on the stoop. Under these circumstances, the frisk was improper, and the evidence seized as a result thereof, i.e., the holster, must be suppressed (*People v La Pene,* 40 NY2d 210, *supra*). Moreover, since the holster, which should have been suppressed, was the only item of evidence connecting defendant to the gun, it follows that the police did not have probable cause to arrest defendant for possession of a gun, and the defendant's subsequent statement to the police must also be suppressed as the fruit of the poisonous tree (*Wong Sun v United States,* 371 US 471; *Brown v Illinois,* 422 US 590; *Dunaway v New York,* 442 US 200). However, that part of the defendant's motion to suppress the gun found by the police during the search of some bushes was properly denied since defendant did not demonstrate any expectation of privacy in that area, and the discovery of the gun was not the direct fruit of unlawful police activity (*People v Ponder,* 54 NY2d 160, 166; *People v David L.,* 56 NY2d 698, revg 81 AD2d 893; *United States v Salvucci,* 448 US 83; *Rawlings v Kentucky,* 448 US 98; *Rakas v Illinois,* 439 US 128). Accordingly, the matter is remitted to Criminal Term so that the People may have the opportunity of establishing defendant's guilt of criminal possession of a weapon by evidence other than, and independent of, the holster and statement which we have ordered suppressed. Titone, J. P., Mangano and Gibbons, JJ., concur.

Weinstein, J., dissents and votes to affirm the judgment appealed from, with the following memorandum: Under the circumstances at bar, the police officer did in fact have a reasonable suspicion that defendant had committed a crime and was armed, and accordingly the officer acted prudently in order to secure his own safety. The predicate for the acts of the officer was information contained in a radio message indicating that a burglary was in progress and that there was a possibility of encountering a man with a gun at the given location. This radio message triggered the officer's common-law right to detain to the extent necessary to obtain explanatory information (*People v La Pene,* 40 NY2d 210, 223). The officer discovered the defendant in the driveway of the subject location, engaged in a heated verbal exchange with another man, who might well have been the homeowner. The defendant brushed into the uniformed police officer and seemed somewhat "restricted" and "self-conscious" in his movements. In my opinion, these observations clearly warranted a reasonable suspicion on the part of the officer that he might be in danger of physical injury by virtue of the defendant being armed (*People v La Pene, supra,* p 224). While it is true that no description of the burglar was furnished in the course of the radio message, the cumulative effect of that message in conjunction with the factors subsequently encountered at the announced location, collectively supported a reasonable suspicion justifying the more intrusive police conduct inherent in a frisk (see *People v Benjamin,* 51 NY2d 267; *People v Olsen,* 93 AD2d 824). Accordingly, I deem the frisk, which resulted in the discovery of the holster on defendant's person, to have been entirely legal. As expressed in a recent case from the First Department: " 'Courts simply must not, in this difficult area of street encounters between private citizens and law enforcement officers, attempt to dissect each individual act by the policemen; rather, the events must be viewed and considered as a whole, remembering that reasonableness is the key principle when undertaking the task of balancing the competing interests presented (*People v Chestnut,* 51 NY2d 14, 23)' " (*People v De Jesus,* 92 AD2d 521, 522). In a similar vein, the United States

Supreme Court has made the following recognition with respect to the standards to be applied in determining whether probable cause for an arrest or for a search and seizure exists: "In dealing with probable cause, * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved * * * Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice" (*Brinegar v United States,* 338 US 160, 175-176). The discovery of defendant's holster as a result of the legal frisk and the retrieving of a gun, which fit that holster, from an area in which, as the majority notes, defendant did not demonstrate any expectation of privacy, gave rise to probable cause to arrest. Defendant thereafter freely waived his rights and admitted that he threw down the gun as soon as he saw the first police car turn the corner. Even if defendant had been illegally detained, his act of discarding the revolver was not in direct and immediate response to his detention. Rather than constituting "a spontaneous reaction to a sudden and unexpected confrontation with the police, the defendant's attempt to discard the revolver was an independent act involving a calculated risk" (*People v Boodle,* 47 NY2d 398, 404, cert den 444 US 969). Having been thus abandoned by defendant, the gun was properly admitted into evidence. It is my conclusion, based upon these circumstances, that the holster, gun and defendant's incriminating statement are admissible in evidence. I accordingly vote to affirm the judgment of conviction.