■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN W. FARINARO, Appellant. — Appeals by defendant (1) from a judgment of the County Court, Nassau County (Delin, J.), rendered January 23, 1981, convicting him of robbery in the first degree (two counts), criminal possession of a weapon in the second degree, and reckless endangerment in the first degree, upon a jury verdict, and imposing sentence, and (2) by permission, from an order of the same court, dated March 28, 1983, which denied his motion to vacate the judgment of conviction pursuant to CPL 440.10 and (3) by permission, as limited by his brief, from so much of an order of the same court, dated May 4, 1983, as upon renewal and reargument of his motion to vacate the judgment, adhered to the original determination. The appeal from the judgment brings up for review the denial, after a hearing, of that branch of defendant's pretrial motion which sought suppression of certain evidence. ¶ Order dated March 28, 1983 affirmed and order dated May 4, 1983 affirmed insofar as appealed from. No opinion. ¶ Judgment affirmed. ¶ On May 8, 1980, Sergeant Francis Sochor was on plainclothes radio motor patrol in Woodmere, Nassau County. In the course of this patrol, he saw two men, one of whom was carrying a sawed-off shotgun, running from the front stoop of a house located on Sutton Place. The two men entered a 1972 Ford automobile parked at the curb of the street. Sochor pulled his car in front of the Ford to prevent its leaving, exited his patrol car and identified himself as a police officer. At this point, defendant opened the door of the Ford and pointed a shotgun at the officer. While Sochor was requesting assistance by radio, defendant left the Ford and ran south on Sutton Place carrying the shotgun. ¶ Defendant then attempted to steal a car from one Abraham Friedman who lived nearby. He was unsuccessful in obtaining Friedman's car but, shortly thereafter, succeeded in stealing the car of another Woodmere resident, Ruth Gould. ¶ Both Friedman and Gould reported defendant's activity to the police and each gave a description of defendant. Mrs. Gould also gave a description of her stolen vehicle. ¶ In the interim, the ownership of the 1972 Ford had been traced to a James Flores, who, in the course of being interviewed by the police, informed them that some three days previously he had lent the car to the defendant. Flores also advised them that the defendant might be found at the home of one Steven Fenslau in Rosedale, Queens. ¶ After receiving this information, several Nassau County police officers proceeded to the Fenslau residence, arriving at about 2:15 A.M. on May 9, 1980. After observing that the car owned by Ruth Gould was parked about a half a block away from the home in question, the police looked through a window in the front door of the premises and saw a white male lying on the couch covered by a blanket. They entered the house through the unlocked front door, awoke the male on the couch (the defendant) and advised him of his *Miranda* rights. Defendant indicated that he understood the rights, at which point Detective Thomas Goodwin asked, "Before anyone gets hurt, where is the shotgun?" The defendant replied that it was in the garage of the residence; he was then handcuffed and led by the police to the garage in which he revealed the whereabouts of the shotgun. Defendant also advised the police officers that the shotgun was loaded. ¶ Defendant argues for the first time on appeal that there was no probable cause to support his arrest. Since this claim was not raised at the suppression hearing, the issue is not preserved for our review (see *People v Baldi*, 96 AD2d

212, 218; *People v Cappiello,* 85 AD2d 608; *People v Jones,* 81 AD2d 22). In any event, defendant's argument that probable cause was lacking is meritless. Probable cause exists if the facts and circumstances known to the arresting officer would warrant a reasonable person, who possesses the same expertise as the officer, to conclude under all the circumstances known to him that the defendant had committed or was committing a crime (*People v Bittner,* 97 AD2d 33, 36; *People v Crosby,* 91 AD2d 20, 26, mot for lv to app den 59 NY2d 765). In this case the police knew: (1) that the man being sought for aiming a shotgun at the police officer had been driving Flores' car; (2) that defendant had borrowed Flores' car; (3) that defendant might be found in the Fenslau home; and (4) that Mrs. Gould's car, which, as indicated to the police officer, was stolen by the man sought for the incident with Sochor, was parked close to the Fenslau residence. The police, therefore, had probable cause to believe that the man they were seeking was in the house. Once inside the house, the police recognized the man on the couch as the defendant. Consequently, defendant's arrest was lawful. ¶ Defendant further contends that absent exigent circumstances, the police may not enter a suspect's premises to arrest him without a warrant, even if probable cause exists which would otherwise justify the arrest (*Payton v New York,* 445 US 573). Because the police had no search warrant in this case, defendant argues that their entry into the Fenslau home violated Fourth Amendment guarantees and, therefore, any statements given or physical evidence seized at the premises should have been suppressed. However, defendant is obligated to demonstrate that he had a reasonable expectation of privacy in the premises (see *United States v Salvucci,* 448 US 83; *People v Ponder,* 54 NY2d 160; *People v Delmonico,* 94 AD2d 773, 775). We conclude that defendant failed to demonstrate that he could reasonably entertain such an expectation. It was his testimony that his home was in Long Beach. While claiming that he had stayed with the Fenslaus "many times", he admitted that the last time he had stayed at the house was some three weeks before the night of his arrest. He further acknowledged that he did not have a·room or bed in the Fenslau home, that he did not keep clothes on the premises, and that the couch upon which he was sleeping at the time of his arrest did not convert into a bed. ¶ It is well settled that "a person can have a legally sufficient interest in a place other than his own home so that the Fourth Amendment protects him from unreasonable governmental intrusion into that place" (*Rakas v Illinois,* 439 US 128, 142). Here, the evidence clearly demonstrates that defendant was a transient in the Fenslau residence and, under all of the circumstances, had no reasonable expectation of privacy in the living room of the Fenslau home. He therefore has no standing to contest the warrantless entry by the police. ¶ Also for the first time on appeal, defendant contends that he was subjected to custodial interrogation in the absence of counsel at the time he was represented by counsel on unrelated charges (see *People v Rogers,* 48 NY2d 167). While such a contention may be raised for the first time on appeal (*People v Samuels,* 49 NY2d 218), the record must disclose a sufficient factual basis to sustain such a contention (*People v Grosfeld,* 58 NY2d 887; *People v Charleston,* 54 NY2d 622). At the suppression hearing it was adduced that Detective Goodwin was aware of the defendant's "previous arrest" and "previous robbery". The officer further testified that on the night of his arrest defendant "indicated he was acquitted" of those charges. Such testimony does not sustain a claim that the police had actual knowledge that the defendant was represented by counsel on unrelated charges. Moreover, we can find no basis for charging the police with what, if anything, further inquiry would have disclosed (see *People v Bartolomeo,* 53 NY2d 225), in light of the fact that defendant told Goodwin that he had been acquitted of the charges. This being the case, Goodwin was under no duty to make further inquiry (see *People v*

*Marshall,* 98 AD2d 452). ¶ Finally, defendant argues that he was deprived of his constitutional right to effective assistance of counsel, in that his attorney neglected to call several witnesses whose testimony allegedly would have been exculpatory, and did not pursue his claim pursuant to *People v Rogers (supra).* A review of the entire record, however, fails to disclose that defendant's representation was not "adequate or effective in any meaningful sense of the word" (*People v Droz,* 39 NY2d 457, 463; see *People v Baldi,* 54 NY2d 137, 146). There is no question that defense counsel pursued defendant's *Payton (supra)* claim, effectively cross-examined the People's witnesses and presented a credible defense, namely, that this was a case of mistaken identification and that Flores was in fact the perpetrator. That a defense is not successful does not lead inevitably to the conclusion that its presentation was fundamentally ineffective (see *People v Baldi, supra,* pp 146-147). Defendant's other contentions have been considered and have been found to be entirely without merit. Bracken, J. P., Niehoff, Rubin and Boyers, JJ., concur.