◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GREGORY DE MOSS, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Chetta, J.), rendered January 7, 1981, convicting him of attempted murder in the second degree, assault in the first degree and criminal

possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of defendant's motion to suppress identification testimony.

Judgment affirmed.

On September 24, 1979, Larry Collins left his apartment at approximately 7:45 A.M. to register at school. As he walked towards the bus stop he heard a door slam, looked around and saw one James Rowe Gill leave the building and enter a waiting car which had two or three occupants. As Collins continued walking he observed the car come to a stop a short distance away. An individual, subsequently identified by Collins as defendant, exited the car and approached Collins. He introduced himself as Gill's cousin and told Collins that he had something for him from his cousin. After a further exchange of words, he fired two shots, hitting Collins once in the lower back. He then ran back to the car and left the scene.

Later the same day, Police Officer Goods, assigned to investigate the shooting, interviewed Collins at the hospital. The following day, Goods arrested Gill. He learned that Gill had had an argument with Collins and brought defendant and defendant's brother to the area to seek out Collins. Gill provided the officer with defendant's first name, "Greg", the first name of Greg's brother, "Jay", and the first name and telephone number of "Doris", defendant's girlfriend.

By tracing the telephone number, Goods ascertained the girlfriend's address. Three days later, on September 28, 1979, without first obtaining a warrant, Goods proceeded with four other officers to that address. He dialed Doris' telephone number from a nearby telephone booth. When the young lady answered, he stated that it was "Jay" and asked whether "Greg" was there. The woman said, "oh, this isn't Jay, but hold on". Goods and two officers then proceeded to the apartment door with their guns drawn, while the other officers went to the rear of the building. The officers knocked on the door, identified themselves as police officers, and were admitted by the young lady. The officers told her that they knew the defendant was there and that he was wanted for attempted murder. At first, Doris maintained that she and her young child were the only persons inside the apartment. When Goods asked her if they could have a look in the rear bedroom, she threw up her hands and said, "go ahead and look".

The officers entered the rear bedroom and observed defendant going out the window and down the fire escape. Upon seeing the officers positioned below in the backyard, defendant returned

inside the bedroom and was arrested. Defendant was photographed, and on the same day Collins made a photo identification of defendant as the person who shot him. On October 25, 1979, approximately one month later, Collins picked defendant out of a lineup conducted in the presence of defense counsel.

At the suppression hearing, defendant contended that the identification testimony should be suppressed on the ground that the police lacked probable cause to make the arrest and the photo and subsequent lineup identifications were "fruits of the poisonous tree". He also contended that the photo array and lineup identifications were impermissibly suggestive. Defendant did not testify, nor was evidence offered to show that he had any reasonable expectation of privacy at his girlfriend's apartment. On the contrary, in cross-examining the arresting officer, defense counsel elicited testimony to show that the officer knew he *went to an apartment occupied by somebody else, not by defendant.*

It was only after the hearing had been concluded, and the matter was *sub judice,* that defense counsel first sought, by supplemental memorandum of law, to raise the issue that the warrantless arrest of defendant was unlawful, based upon *Payton v New York* (445 US 573), which had recently been decided. No request was made to reopen the hearing for the taking of additional evidence to show any expectation of privacy at the girlfriend's apartment.

The court found that the police officers had probable cause to arrest the defendant, and that the photo array and lineup identifications were not impermissibly suggestive. While noting that the People had failed to prove the voluntariness of the consent to enter Doris' apartment, the court declined to apply *Payton (supra)* retroactively. The hearing court did not address the issue of whether defendant had standing to contest the warrantless entry by the police.*

While it is now settled that *Payton* should be applied retroactively (*United States v Johnson,* 457 US 537), upon the instant record defendant failed to demonstrate that he had a reasonable

---

* Following the court's decision rendered in open court on June 26, 1980, defense counsel moved for reargument based upon a notice of motion and memorandum of law. Again, no request was made to reopen the hearing to take additional evidence on the issue of expectation of privacy. On September 19, 1980, the court granted reargument and adhered to its original decision. We note, parenthetically, that while defendant testified at the trial, no facts were elicited to show that he had any expectation of privacy at Doris' apartment. On the contrary, in his alibi testimony at the trial, defendant stated that he was "[h]ome, sleeping" — at his mother's house — at the time of the shooting.

expectation of privacy in the premises, and thus defendant failed to establish his standing to challenge the warrantless entry by the police officers into his girlfriend's apartment to effectuate his arrest (see *United States v Salvucci,* 448 US 83; *People v Ponder,* 54 NY2d 160; *People v Farinaro,* 101 AD2d 891).

While "a person can have a legally sufficient interest in a place other than his own home so that the Fourth Amendment protects him from unreasonable governmental intrusion into that place" (*Rakas v Illinois,* 439 US 128, 142), it was incumbent upon defendant at the suppression hearing to establish a factual predicate to support his contention that the warrantless arrest violated his rights under *Payton* (*supra*), which he failed to do. This defect was not cured by the memorandum of law his counsel submitted while the matter was *sub judice* or by the papers submitted on his subsequent motion to reargue. Under these circumstances, the retroactivity of *Payton* is irrelevant (see *People v Mercado,* 62 NY2d 866, 867; *People v Kaminski,* 58 NY2d 886; *People v Grosfeld,* 58 NY2d 887).

We have considered defendant's other contentions and find them to be without merit. Bracken, J. P., Niehoff, Rubin and Lawrence, JJ., concur.