John FARINARO, Petitioner,

v.

William KIRK, Superintendent, Wallkill Correctional Facility, Dennis Dillon, District Attorney of Nassau County, and Robert Abrams, Attorney General of the State of New York, Respondents.

No. 87 CV 2067.

United States District Court, E.D. New York.

Nov. 4, 1987.

John Farinaro, pro se.

Dennis Dillon, Dist. Atty. of Nassau County, (Lawrence J. Schwarz, Mineola, of counsel), for respondents.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

John Farinaro has petitioned the Court for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner was convicted, after a jury trial in County Court, Nassau County, of two counts of robbery in the first degree, N.Y.Penal Law § 160.15 (McKinney 1975), reckless endangerment in the first degree, *id.* § 120.25, and criminal possession of a weapon in the second degree, *id.* § 265.03. He was sentenced to concurrent prison terms of ten to twenty years on the robbery counts, three-and-one-half to seven years on the reckless endangerment count, and seven-and-one-half to fifteen years on the possession count. The convictions were unanimously affirmed, and leave to appeal was denied. Mr. Farinaro now brings this petition, asserting that he was convicted in violation of various federal constitutional rights. For the reasons set forth below, the petition is denied.

## FACTS

### I. Circumstances Surrounding the Claims

On May 8, 1980, Sergeant Francis Sochor was on patrol in Woodmere, New York. At approximately 8:30 p.m., he saw petitioner and another man running from the front door of a house on Sutton Place. Petitioner was carrying a sawed-off shotgun. The two men entered a 1972 Ford automobile, and tried to drive away. Sergeant Sochor blocked their vehicle with his own, and ordered them to halt. Petitioner then opened his car-door, pointed the shotgun at the sergeant, and ran away. Petitioner unsuccessfully attempted to steal a car from Abraham Friedman, who lived nearby. He subsequently stole the car of another neighbor, Ruth Gould. Both Mr.

Friedman and Mrs. Gould observed petitioner, and reported these incidents to the police.

In the meantime, the police had traced ownership of the 1972 Ford to James Flores. Flores told the police that he had lent the car to petitioner and stated that petitioner might be found at the home of Steven Fenslaw in Rosedale, Queens.

Shortly after 2:00 a.m., police officers arrived at the Fenslaw residence. They observed Ruth Gould's car parked nearby. They entered the house, arrested petitioner, and advised him of his *Miranda* rights, which he indicated that he understood. At that point, Detective Thomas Goodwin asked, "Before anyone gets hurt, where is the shotgun?" Petitioner stated that it was in the garage, and showed the officers its location. In response to questioning, he stated that the gun was loaded. Petitioner thereafter was taken to a police station, was administered fresh *Miranda* warnings, and invoked his right to remain silent. An inventory was made of the items seized from petitioner. Keys to Mrs. Gould's car were among the items.

On May 9, Sergeant Sochor, who was aware that an arrest had been made, identified petitioner's photograph from an array of six photos. On the same day, Mr. Friedman and Mrs. Gould, both of whom also knew that an arrest had been made, identified petitioner in separate lineups at the police station.

## II. Proceedings Before the Trial Court

Petitioner moved the trial court to suppress (1) physical evidence, on the ground that it was seized illegally, (2) his statements to the police, on the ground that they were made involuntarily, and (3) incourt identifications of petitioner, on the ground that they were tainted by suggestive pretrial identification procedures.

The trial court denied the motions, finding that petitioner had knowingly and voluntarily waived his rights when he spoke to the police, and that his statements were not products of police coercion. The Court also found that the pretrial identification procedures had not violated petitioner's constitutional rights. Plaintiff subsequently was convicted, and sentence was imposed.

## III. Post–Trial Proceedings

Petitioner appealed the convictions to the Appellate Division, Second Department. He argued, among other things, that he did not voluntarily consent to the seizure of the shotgun, that he did not waive his *Miranda* rights, and that police interrogated him in violation of his right to counsel. Petitioner also argued that the pretrial identification procedures were suggestive and improper because petitioner was not represented by counsel when the procedures were conducted. He further contended that prosecutorial and judicial misconduct had deprived him of a fair trial, and that he had been deprived of effective assistance of trial counsel.

The Appellate Division unanimously affirmed the convictions. *People v. Farinaro*, 110 A.D.2d 653, 487 N.Y.S.2d 801 (2d Dep't 1985) (amending *People v. Farinaro*, 106 A.D.2d 516, 484 N.Y.S.2d 500 (2d Dep't 1984) (vacating *People v. Farinaro*, 101 A.D.2d 891, 476 N.Y.S.2d 356 (2d Dep't 1984))). The court discussed and rejected petitioner's ineffective assistance of counsel argument. It then stated that petitioner's other arguments had been considered and had been found to be "entirely without merit." 110 A.D.2d at 656, 487 N.Y.S.2d at 805. Leave to appeal to the New York Court of Appeals was denied. *People v. Farinaro*, 65 N.Y.2d 815, 482 N.E.2d 931, 493 N.Y.S.2d 1035 (1985) (Simons, J.).

In the meantime, petitioner had moved to vacate his convictions under N.Y.Crim. P.Law § 440.10 (McKinney 1971). The motion was denied. He then brought another § 440.10 motion, arguing that he had been denied effective assistance of trial counsel. He contended that when he was arrested in this matter, he was represented by counsel on an unrelated case. Such representation, he argued, precluded the police from questioning him concerning this case, and the statements should have been suppressed under *People v. Rogers*, 48 N.Y.2d 167, 397 N.E.2d 709, 422 N.Y.S.2d 18 (1979). Petitioner argued that counsel's failure to

move for suppression constituted ineffected assistance of counsel. The State opposed the motion on procedural and substantive grounds. The trial court denied petitioner's motion on procedural grounds, finding that he was in a position to raise the issue in his previous § 440.10 motion, but had failed to do so. Petitioner's application to re-argue the motion was denied. The Appellate Division granted leave to appeal the trial court's denial of the § 440.10 motion. This appeal was consolidated with petitioner's judgment appeal, and was denied. 110 A.D.2d 653, 487 N.Y. S.2d 801 (2d Dep't 1985).

Petitioner brought yet another § 440.10 motion, arguing once again that he was denied effective assistance of trial counsel because of counsel's failure to move to suppress statements under *People v. Rogers, supra.* He also argued that the State had failed to turn over to him exculpatory material under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194; 10 L.Ed.2d 215 (1963). The trial court denied the motion, and leave to appeal to the Appellate Division was denied.

Petitioner then brought another § 440.10 motion, arguing that he was entitled to a new suppression hearing, and that he was denied effective assistance of counsel. The trial court denied the motion on procedural grounds, and leave to appeal to the Appellate Division was denied.

This petition followed. Petitioner asserts that (1) statements he made to police officers were products of coercion, in violation of his right against self-incrimination, U.S. Const. amend V, XIV; (2) the State failed to disclose favorable evidence to him under *Brady v. Maryland, supra;* (3) he was denied the right to be present at every stage of his trial; (4) he was deprived of effective assistance of counsel because of (a) counsel's conduct at trial, and (b) counsel's failure to move to suppress under *People v. Rogers, supra;* (5) he was afforded an inadequate and unfair suppression hearing because he was denied the right to

confront a witness; (6) the indictment was illegally amended; and (7) the pretrial identification procedures were unconstitutional.[1]

### DISCUSSION

#### I. Exhaustion

Respondents argue that petitioner failed to argue to the state court that deletion of certain parts of the indictment violated his federal constitutional rights. As a result, they contend, he has failed to exhaust state remedies on this claim, *see Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), and the entire petition must be dismissed under *Rose v. Lundy,* 455 U.S. 509, 522, 102 S.Ct. 1198, 1205, 71 L.Ed.2d 379 (1982).

The exhaustion requirement is not met "unless the federal claim has been 'fairly presented' to the state courts." *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir.1982) (en banc), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984). A claim has been fairly presented if it relies on federal cases using a constitutional analysis or if it relies on state cases using a constitutional analysis in like fact situations. *Id.* at 194.

In this case, petitioner's appellate brief cited *Ex parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887) and *People v. Boyd,* 59 A.D.2d 558, 397 N.Y.S.2d 150 (2d Dep't 1977). In *Bain,* the Supreme Court stated:

If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attached to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, *and without which the constitution says 'no person shall be held to answer,' may be frit-*

1. The petition also asserts that the prosecutor engaged in improper conduct. In his brief, petitioner concedes that this issue has not been preserved for federal habeas review. The Court thus deems the claim withdrawn.

*tered away until its value is almost destroyed.*

. . . .

[A]fter the indictment was changed it was no longer the indictment of the grand jury who presented it. *Any other doctrine would place the rights of the citizen, which were intended to be protected by the constitutional provision, at the mercy or control of the court or prosecuting attorney.*

121 U.S. at 10, 13, 7 S.Ct. at 786, 787–88 (emphases added). *Bain* thus placed the amendment-of-the indictment question within a constitutional framework. *Boyd* contains citations to *Bain* and to *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), a case that discussed and explained *Bain. See Boyd*, 59 A.D.2d at 560, 397 N.Y.S.2d at 152. Without considering whether petitioner's challenge to the amendment of his indictment has any merit, I conclude the cases cited in his appellate brief were sufficient to put the state court on notice that this claim was being presented in a federal constitutional context. Petitioner thus has satisfied the exhaustion requirement.

II. Procedural Default

■■■ Where the state court has declined to pass on a petitioner's federal claims because he failed to present them in the manner prescribed by state procedural law, federal habeas review is barred absent a showing of cause for failure to comply with state procedure and prejudice resulting therefrom. *See Wainwright v. Sykes*, 433 U.S. 72, 86–87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977). If an adequate state procedural ground for sustaining the conviction exists, the State argues for affirmance on both procedural and substantive grounds, and the Appellate Division affirms the conviction without opinion, then the federal court assumes that the decision rested on an adequate and independent state procedural ground. *See Martinez v. Harris*, 675 F.2d 51, 54–55 & n. 5 (2d Cir.), *cert. denied*, 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982).

Here, the State's appellate brief argued that all of petitioner's claims except those concerning Sergeant Sochor's and Mr. Friedman's identifications, and ineffective assistance of counsel during the trial, were barred from review for procedural reasons. Respondents argue that the appellate court did not address petitioner's claims and, hence, its decision was based on procedural grounds under *Martinez, supra*. I disagree.

■■■ *Martinez* was concerned with divining the reasoning of a state court in the face of that court's silence. Here, however, the Appellate Division was not silent. A plain reading of the relevant part of the Appellate Division's opinion is that the merits of petitioner's *were* considered, and were summarily rejected. *See People v. Farinaro*, 110 A.D.2d at 656, 487 N.Y.S.2d at 805 ("Defendant's other contentions have been considered and have been found to be entirely without merit."). The court's decision not to amplify its holding may not be transmogrified by *Martinez* into a rejection based on procedural grounds. The Court thus concludes that the merits of petitioner's claims were reached, and will address them accordingly.

III. Merits of the Claims

A. *Statements to Police*

Petitioner argues that his statements to police concerning the location of the gun and the fact that it was loaded should have been suppressed because the statements were coerced and because petitioner had not waived his right to counsel.

■■■ A federal habeas court reviewing the voluntariness of statements must make a determination independent from that of the state court. *Miller v. Fenton*, 474 U.S. 104, 112, 106 S.Ct. 445, 450–51, 88 L.Ed.2d 405 (1985). The test is whether, under the totality of the circumstances surrounding the statements, they were made voluntarily. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed. 2d 854 (1973) (dicta). In this case, after a thorough review of the record, I conclude that petitioner's statements were made voluntarily. Two factors—the late hour at which petitioner was awakened and the ab-

rupt manner of Detective Goodwin—cut in favor of a finding of involuntariness. These factors, however, are outweighed by the factors suggesting that the statements were made voluntarily: petitioner was read his *Miranda* rights and indicated that he understood them, he was an adult of at least average intelligence, and he had had previous contact with the criminal justice system. After an independent review of the record, I conclude that petitioner's statements were not the products of coercion.

 The waiver issue presents similar considerations. The state bears a heavy burden of showing that a defendant has knowingly and voluntarily waived his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 475, 86 S.Ct. 1609, 1628, 16 L.Ed.2d 694 (1966). As with a coercion claim, the test is whether, under "the totality of the circumstances surrounding the interrogation" a waiver has been made. *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197 (1979). A waiver need not be expressed; it may be inferred from the defendant's conduct and words. *See North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979). In this case, petitioner was read his rights, indicated his understanding of them, and made the statements shortly thereafter. Thus, although he did not expressly waive his rights, a waiver may be inferred from his conduct. After a review of the record, the Court makes such an inference. For the foregoing reasons, petitioner's statements were properly admitted against him at trial.

## B. *Failure to Provide Exculpatory Material*

Petitioner asserts that the State's failure to turn over "911" tapes, which allegedly contained the initial reports of the robberies, mandates reversal of his convictions under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny. Prior to trial, petitioner made a general *Brady* request and a specific request for records of, and an opportunity to listen to, recordings. Both requests were granted, although the trial court noted that the State had averred that it did not possess any *Brady* material. At the suppression hearing, held four months later, petitioner again requested the "911" tapes. The State indicated that the tapes had been erased and re-used. In the middle of the trial, the State provided petitioner with index cards, which allegedly contained the time and nature of the "911" calls. Petitioner called a witness who testified that the tapes and the cards were prepared at the same time and that the cards constituted accurate records of the tape recordings. Petitioner did not assert at trial that either the tapes or the cards were exculpatory. He now asserts, as he did in the Appellate Division, that the "911" tapes constituted *Brady* material, the destruction of which violated his right to due process.

 Under *Brady*, a defendant's due process rights are violated when the prosecution fails to disclose material evidence that is favorable to the defendant. *See United States v. Bagley*, 473 U.S. 667, 674, 105 S.Ct. 3375, 3379–80, 87 L.Ed.2d 481 (1985). In this case, there is no indication whatsoever that the "911" tapes were exculpatory. Even assuming that they were, there would be no *Brady* violation because the evidence was not material. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682, 105 S.Ct. at 3384. After a thorough review of the record, I conclude that there is no reasonable probability that disclosure of the "911" tapes would have altered the verdict. First, the contents of the "911" tapes were essentially contained in the index cards, copies of which were turned over to defendant. *Cf. United States v. Gaggi*, 811 F.2d 47, 59 (2d Cir.) ("no *Brady* violation occurs if the defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory evidence"), *cert. denied*, — U.S. ——, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987). Second, the identification testimony concerning petitioner, his possession of Mrs. Gould's car keys when he was arrested, and his statements concerning the

82

gun leads me to conclude that the "911" tapes could not have altered the jury's verdict. Accordingly, defendant's *Brady* argument is rejected.

### C. *Right To Be Present at Trial*

The petitioner asserts that he was absent from the courtroom during jury selection, in violation of his right to be present at trial. U.S. Const. amend VI, XIV. The record, however, is devoid of any indication that petitioner ever was absent from the proceedings. Accordingly, petitioner's claim on this issue is rejected.

### D. *Ineffective Assistance of Counsel*

 Petitioner next argues that he was denied the effective assistance of trial counsel. U.S. Const. amend. VI, XIV. Petitioner asserts that counsel's failure to call certain witnesses—Mrs. Gould's husband, who was unable to identify petitioner at a police lineup, and members of the Fenslaw household, who allegedly could provide alibis for petitioner—constituted ineffective assistance.

In order to prevail on an ineffective assistance claim, petitioner must show that counsel's performance fell below an objective standard of reasonableness, *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984); *Mills v. Scully*, 826 F.2d 1192, 1197 (2d Cir.1987), and that there was a reasonable probability that, but for counsel's mistakes, the outcome of the trial would have been different, *Strickland, supra,* 466 U.S. at 694, 104 S.Ct. at 2068; *Mills, supra,* 826 F.2d at 1197. Petitioner must overcome a strong presumption that counsel's conduct might be considered sound trial strategy. *Strickland, supra,* 466 U.S. at 689, 104 S.Ct. at 2065; *Mills, supra,* 826 F.2d at 1197.

Upon a thorough review of the record, I conclude that petitioner has failed to rebut this presumption. Counsel adequately examined and cross-examined witnesses, objected to the introduction of various exhibits, and made competent opening and summation arguments. Counsel and the State stipulated to Mr. Gould's failure to identify petitioner. Petitioner thus received the benefit of Mr. Gould's testimony without having its effect possibly diluted by, say, Mr. Gould's subsequent belief that petitioner was his assailant. Similarly, there is no indication that members of the Fenslaw household would have provided testimony that, on balance, was favorable to petitioner. Counsel's decision not to call either Mr. Gould or the Fenslaws epitomizes the type of tactical decision to which *Strickland* commands deference. *See Strickland, supra,* 466 U.S. at 689–90, 104 S.Ct. at 2065–66. I thus conclude that counsel's conduct at trial was not objectively unreasonable.

 Petitioner's second assertion is that counsel's failure to move for suppression of his post-arrest statements under *People v. Rogers*, 48 N.Y.2d 167, 397 N.E. 2d 709, 422 N.Y.S.2d 18 (1979) constituted ineffective assistance. *Rogers* held that where an arrestee is represented by counsel on an unrelated charge, and counsel orders the police to cease their questioning, the arrestee may not be questioned further unless counsel is present. *Id.* at 169, 397 N.E.2d at 710–11, 422 N.Y.S.2d at 19. Petitioner argues that his case fell under the *Rogers* rule because he was represented by counsel on an unrelated burglary charge at the time of his arrest. This argument, however, was rejected on the merits by the Appellate Division. *See People v. Farinaro*, 110 A.D.2d 653, 656, 487 N.Y.S.2d 801, 805 (2d Dep't 1985). It thus was not unreasonable for trial counsel not to make a *Rogers* suppression motion, *see Strickland, supra,* 466 U.S. at 688, 104 S.Ct. at 2064–65, and the outcome of the trial would not have been different if he had, *see id.* at 694, 104 S.Ct. at 2068. Accordingly, petitioner's claim of ineffective assistance of counsel is rejected.

### E. *Right to Confront Witness; Right to a Fair Suppression Hearing*

 Petitioner's next argument is that he was deprived of a fair suppression hearing because the trial court restricted his right to confront a witness. At the hearing, Sergeant Sochor testified that he identified petitioner in a photo array on May 9.

Defense counsel sought to cross-examine Sergeant Sochor concerning whether Sochor may have shown James Flores the photo array on May 8, thus impairing Sochor's subsequent identification. The trial court refused to permit this line of questioning. After a thorough review of the record, I conclude that the judge's ruling was not an abuse of discretion. During the hearing defense counsel was permitted to cross-examine Sergeant Sochor concerning Mr. Flores and the photo array. In response to counsel's questions, Sergeant Sochor testified that he had not seen a photograph of petitioner until May 9. *See* Transcript of Suppression Hearing held Nov. 18, 1980, at 25, 28, 68–69. Petitioner thus was afforded the right to cross-examine Sergeant Sochor concerning the photo array. That the answers were not to petitioner's liking is irrelevant. The trial court's refusal to permit repetitive questions did not deprive petitioner of his right to confrontation.

## F. *Amendment of the Indictment*

Petitioner contends that his indictment was amended by the trial court in violation of his constitutional rights. Count 4 of the indictment charged petitioner with reckless endangerment in the first degree, and alleged that petitioner "pointed the muzzle of a loaded twelve gauge shotgun at Nassau County Police Sergeant Francis Sochor *during flight from an attempted armed robbery of a dwelling*" (emphasis added). Count 5 charged petitioner with criminal possession of a weapon in the second degree, and alleged that petitioner "did possess a loaded twelve gauge shotgun and *in the course of the commission of the crime and flight from an attempted armed robbery* did point it at a Nassau County Police Sergeant, one Francis Sochor" (emphasis added). Shortly before trial commenced, defense counsel moved to strike the underscored language. Upon the state's consent, the motion was granted.

■ The fifth amendment's grand jury requirement does not apply to the states. *See James v. Reese,* 546 F.2d 325, 327 (9th Cir.1976); *United States ex rel.*

*Chestnut v. Criminal Court,* 442 F.2d 611, 615 (2d Cir.) (dicta), *cert. denied,* 404 U.S. 856, 92 S.Ct. 111, 30 L.Ed.2d 98 (1971). It therefore follows that it is not constitutional error for a court to permit amendment of a state grand jury indictment. In any event, the material deleted in this case was not necessary to prove the offenses charged. Accordingly, the amendment, to which petitioner consented, was not unconstitutional. *See United States v. Miller,* 471 U.S. 130, 144, 105 S.Ct. 1811, 1819–20, 85 L.Ed.2d 99 (1985).

## G. *Identifications*

Petitioner's final argument is that the identifications of him by Sergeant Sochor, Mrs. Gould, and Mr. Friedman should have been suppressed because they were products of improper pretrial identification procedures.

### 1. Sergeant Sochor

■ Petitioner contends that Sergeant Sochor's in-court identification of him was tainted by the photo array procedure. Petitioner points out that when Sochor viewed the array, he knew that an arrest had been made and that the arrestee's photograph was in the array. This, petitioner argues, created a substantial risk of misidentification. After a thorough review of the record, I disagree.

First, the photos in the array itself were not unduly suggestive. Each of the photos depicted a man of the same race, and similar age and features of petitioner. Second, there is no indication that Sergeant Sochor had previously viewed a photograph of petitioner. Finally, there is no indication that the police pressured the sergeant into making an identification. Viewed in the "totality of the surrounding circumstances," *Simmons v. United States,* 390 U.S. 377, 383, 88 S.Ct. 967, 970, 19 L.Ed.2d 1247 (1968), the photo array procedure was not "so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification," *id.* at 384, 88 S.Ct. at 971.

■ Even if the procedure were suggestive, however, I conclude that Sergeant Sochor's in-court identification was proper-

ly admitted because it was reliable. *See Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). Sergeant Sochor observed petitioner for several minutes after petitioner fled from the site of the burglary. For a time, Sochor and petitioner faced each other, and were separated by only a few feet. In addition, when viewing the array of six photos on the next day, Sochor did identify petitioner's photograph. The in-court identification thus stood independently from the pre-trial procedure, and its admission did not offend due process.

2. Mrs. Gould and Mr. Friedman

■ Petitioner argues that admission into evidence of Mrs. Gould's and Mr. Friedman's pretrial and in-court identifications violated his due process rights. I turn first to the pretrial procedures. Mrs. Gould and Mr. Friedman identified petitioner at separate police lineups. Petitioner asserts that the lineups were improperly suggestive because both Mrs. Gould and Mr. Friedman knew that an arrest had been made. After thoroughly reviewing the record, I conclude that the lineup procedures did not create a very substantial likelihood of misidentification. *Neil v. Biggers, supra,* 409 U.S. at 198, 93 S.Ct. at 381–82. There is no indication that the witnesses either were encouraged to make an identification or that the membership of the lineup was such that petitioner would stand out. I thus conclude that the pretrial identifications were properly admitted at trial. The in-court identifications thus were properly allowed, and their reliability was a question of fact for the jury to decide. *See Jarrett v. Headley,* 802 F.2d 34, 42 (2d Cir.1986).

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is denied.

SO ORDERED.