OPINION OF THE COURT
Kaye, J.
The central issue to be decided on this appeal is whether defendant has standing to challenge a search that results in the discovery of contraband, based solely on his alleged constructive possession of that contraband. Consonant with State law since People v Ponder (54 NY2d 160) abrogating "automatic standing,” we conclude that defendant failed to establish standing to challenge the search and therefore reverse the Appellate Division order overturning his conviction.
I.
Defendant was arrested following a search of the house occupied by his girlfriend, Jacquelin Glass, and their infant son. The Rochester Police Department Narcotics Unit had received information that a large quantity of marihuana had been delivered to that location from Florida. Members of the *353 unit arrived at the house shortly before midnight to execute a "no-knock” search warrant. Police with sledgehammers entered through both the front and side doors. Defendant attempted to hold the front door closed and was handcuffed as soon as the officers were inside.
The search of the house began in the upstairs master bedroom, where the officers immediately found two suitcases containing nearly 75 pounds of marihuana bricks in one of the closets. A smaller quantity of marihuana was discovered in a dresser, along with a handgun and $800 in cash; this dresser contained men’s clothing and masculine toilet articles. Another dresser held women’s clothing, but also contained a shoe box with a wallet and various items of identification in defendant’s name. Other identification belonging to defendant, including a temporary driver’s license and birth certificate, as well as unopened mail addressed to him and an address book with his parole officer’s card, was found elsewhere in the bedroom. Men’s and women’s clothing hung in the closet in which the marihuana was discovered. In addition to several scales and a box of envelopes of a type commonly used to package "nickel bags” of marihuana, $18,000 in cash was found in three metal boxes in another bedroom closet; inside one of the boxes was identification bearing a photograph of defendant in the name of Sam Glass.
A search of a second bedroom similarly disclosed men’s and women’s clothes in the closet, and a large cardboard box holding defendant’s correspondence and other personal items, including a number of photographs of him. When the ground floor was searched, more photographs of defendant were found in the living room. A stolen .45 caliber pistol and clip of ammunition were found in the kitchen cupboard. At the time of the search, Glass told one officer that "all the stuff upstairs” belonged to defendant. Both Glass and defendant were charged with possession of the guns and marihuana.
Before trial, both defendants moved for suppression of the fruits of the search. The People opposed defendant’s motion on the basis that he had no standing to complain of the search of Glass’s house, pointing to defendant’s failure in his motion papers to allege any privacy interest in the premises and in particular to earlier testimony before the Grand Jury. Both defendant and Glass had testified under oath before the Grand Jury that defendant never stayed at Glass’s house, that he kept no clothes or other personal property there except for a *354 few stored papers, that a male boarder had resided in the house, and that defendant had no proprietary interest in the premises but was merely a visitor, albeit a daily one.
Defendant’s motion to suppress was denied for lack of standing. A hearing was conducted on Glass’s motion, which was also denied on the ground that the search warrant met the "totality of circumstances” test set forth in Illinois v Gates (462 US 213). Following a jury trial, defendant was convicted of possession of the marihuana and one of the guns, and Glass was convicted on the marihuana charge.
On separate appeals, the Appellate Division reversed Glass’s conviction and dismissed the indictment, holding that the trial court erred in applying the Gates test rather than the Aguilar-Spinelli test (see, Aguilar v Texas, 378 US 108; Spinelli v United States, 393 US 410) in evaluating the search warrant, and that under the latter standard, the warrant application was inadequate (136 AD2d 892, lv denied 71 NY2d 968). The Appellate Division likewise reversed defendant’s conviction, citing this court’s decisions in People v Millon (69 NY2d 514) and People v Mosley (68 NY2d 881, rearg denied 69 NY2d 707, cert denied 482 US 914) for the propositions that defendant had standing because "the People rely on the constructive possession of the drugs as the basis for the arrest of defendant” and that "the People may not predicate the charges against defendant on the theory that he constructively possessed the drugs because he was present on the premises at the time the search warrant was executed and simultaneously deprive him of standing to challenge the legality of the search.” (139 AD2d 946.) The court did not address the question whether defendant’s allegations constituted an assertion of a legitimate expectation of privacy in the premises. Reasoning that once standing was established the same result was required in defendant’s case as on Glass’s appeal, the Appellate Division dismissed the indictment.
We now determine that defendant failed to establish standing to challenge the search and therefore reverse the Appellate Division order.
II.
The exclusionary rule has as an objective the social benefit of deterring unlawful police conduct. Given that the basis of the rule is a social policy judgment, it is not surprising that there has been no consensus concerning the contours of the *355 rule. The decision as to who is, or should be, entitled to enforce the prohibition against unreasonable searches and seizures necessarily entails balancing the cost of the loss of probative evidence against the gain in deterring lawless police conduct. Courts in other States have chosen to weigh these factors differently, but in this State, as in the Federal courts, it has long been held that the policy best serving these competing interests is one that — recognizing the rights protected by the Fourth Amendment as personal rights — limits invocation of the exclusionary remedy to persons whose own protection has been infringed by the search and seizure. (Rakas v Illinois, 439 US 128, 138; People v Cefaro, 21 NY2d 252, revd on rearg on other grounds 23 NY2d 283; compare, People v Martin, 45 Cal 2d 755, 290 P2d 855.) "In order to qualify as a 'person aggrieved by an unlawful search and seizure’ one must have been a victim of a search and seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else.” (Jones v United States, 362 US 257, 261.)
The test by which a defendant’s Fourth Amendment personal right, or "standing,” is established has hardly been a static one. In early Federal court decisions, a defendant’s standing was measured by principles of property law. Only defendants who made affirmative claims of ownership (or possession) of the seized property or of a significant possessory interest in the premises searched had standing to challenge a search and seizure (Simmons v United States, 390 US 377, 389-390).
An exception to this general requirement applied in cases in which a criminal defendant was charged with a possessory offense. In such cases, the defendant was given standing to challenge the search or seizure of contraband without being required to assert ownership or possession of the property or the premises in which it was found. In creating this so-called "automatic standing” exception in Jones v United States (362 US 257), the Supreme Court was concerned with two separate anomalies it perceived in the application of traditional standing rules to cases involving possessory offenses. First was the dilemma faced by the defendant required to admit possession of the property or premises in order to vindicate Fourth Amendment rights, at a time when such evidence was admissible at trial and also likely sufficient for conviction of the *356 charge of possession. Second was the position assumed by the government, characterized by Justice Frankfurter as "contradictory,” as it argued in the pretrial stages of the case that the defendant had failed to establish any possessory interest in the property and hence did not have standing, and then proceeded to prove at trial that the defendant had in fact possessed the property (Jones v United States, supra, at 261-264). The Jones automatic standing rule, which addressed these anomalies, was adopted in this State (see, People v Hansen, 38 NY2d 17).
Subsequent Supreme Court decisions eliminated both policy bases upon which the automatic standing rule rested. First, in Simmons v United States (390 US 377, supra), the court held that testimony in á suppression hearing cannot be used at trial against a defendant on the prosecution’s direct case, thus removing much of the self-incrimination dilemma that had motivated the automatic standing rule.
Second, in Rakas v Illinois (439 US 128) and Rawlings v Kentucky (448 US 98), the Supreme Court substantially reevaluated the nature of the interest that would give rise to Fourth Amendment standing. In Jones, the defendant not only had been charged with a possessory narcotics offense, but also had been staying for some time as a guest in the apartment that was searched and was present at the time of the search. In addition to automatic standing for those who, like Jones, were charged with possessory offenses, the Supreme Court had gone on, in a second branch of its opinion, to reject the lower courts’ view that ownership of or a leasehold interest in the premises was required to demonstrate a Fourth Amendment interest in the premises, and stated instead that "anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him”. (Jones v United States, supra, at 267.) Writing for a majority of the court in Rakas, Justice Rehnquist expressly rejected legitimate presence on the premises as a test for assessing Fourth Amendment rights. Borrowing instead a related concept from Katz v United States (389 US 347), the court opined that the issue of "standing” was simply an application of substantive Fourth Amendment doctrine and that the determinative question was "whether the person who claims the protection of the Amendment has a legitimate expectation of privacy”. (Rakas v Illinois, supra, at 143.)
*357 Rakas was a case where the defendant’s Fourth Amendment claim was based on his connection to the invaded premises — in that case, an automobile. What the newly articulated "legitimate expectation of privacy” standard meant in cases where the defendant’s claim was based solely on the defendant’s interest in the seized property was clarified in Rawlings v Kentucky (supra) and in United States v Salvucci (448 US 83), both decided the same day. As with the "legitimately on [the] premises” aspect of Jones, Justice Rehnquist likewise found that possession of the seized goods was " 'too broad a gauge’ ” of Fourth Amendment rights (United States v Salvucci, supra, at 92-93), and while claiming that ownership or possession of the seized property was one "factor to be considered”, opted for a totality of the circumstances test directed primarily if not exclusively at the defendant’s expectation of privacy in the searched premises (see, United States v Salvucci, supra, at 91-92) Thus, the second policy basis for the automatic standing rule vanished, for there was no inconsistency in simultaneous assertions by the government that the defendant possessed the charged contraband but lacked a legitimate expectation of privacy in the area from which it was seized, and in Salvucci the rule was abolished as matter of Federal constitutional law.
Shortly after the Supreme Court did away with the automatic standing rule for possessory offenses in Salvucci, this court was faced with the policy choice whether, absent any Federal constitutional constraint to do so, the automatic standing rule should be retained as a matter of State constitutional law. We chose to abrogate the rule, "seeing no reason at this time to diverge from the Supreme Court’s analysis in Salvucci”. (People v Ponder, 54 NY2d 160, 165; see also, People v Hunter, 55 NY2d 930.) Ponder established that, as a matter of State constitutional law, a defendant seeking to challenge a search and seizure could not rest upon the fact that the People had charged possession, but was required to demonstrate a personal legitimate expectation of privacy in the searched premises.
Since Ponder, the courts in possession cases have analyzed the issue whether a defendant has asserted a legitimate expectation of privacy, and hence has standing, independently of the question how the People later intended to prove the charges, be it through evidence of the defendant’s connection to the area where the contraband was discovered or otherwise. *358 Indeed, there are many cases where a defendant’s possession of seized property was ultimately proved through evidence of dominion and control, but where the defendant was found not to have established a sufficient legitimate expectation of privacy in the searched premises to invoke the remedy of suppression reserved for those asserting a violation of personal Fourth Amendment rights (see, e.g., People v Gomez, 67 NY2d 843; People v Vargas, 140 AD2d 472; People v Seaberry, 138 AD2d 422; People v Torres, 133 AD2d 713, revd on other grounds 72 NY2d 1007; People v Krauss, 120 AD2d 678; People v Wilkerson, 108 AD2d 831; People v Vasquez, 97 AD2d 524; People v Delmonico, 94 AD2d 773; People v Lerhinan, 90 AD2d 74; People v Traynham, 85 AD2d 748). In other cases where the defendant was found to have standing, or where there was a hearing on the question, the analysis has nonetheless been based on the privacy claims made by the defendant, and not on the nature of the People’s proposed trial evidence (see, e.g., People v Simon, 107 AD2d 196; People v Castrechino, 105 AD2d 1089; People v Bogle, 100 AD2d 762; People v Battee, 94 AD2d 935).
Only recently, in a unanimous opinion, this court again applied the rule of Ponder that it is a defendant’s burden to demonstrate his or her own constitutional interest in seeking suppression.[1] In People v Rodriguez (69 NY2d 159), the defendant was charged with possession of drugs and hypodermic instruments found in an apartment in which he was sleeping. Affirming the denial of the defendant’s motion to suppress, we traced the evolution of the standing requirement up to the abrogation of the automatic standing rule and, citing Ponder, restated its holding that "the search and seizure entitlement under our own State Constitution was sufficient if accorded only to those with standing and that there was no reason to apply a more generous standing rule than was allowed under the Federal constitutional standard”. (Id., at 162.)
This analysis is codified in CPL 710.60, which allocates to the defendant seeking suppression of evidence the initial burden of showing sufficient grounds for the motion based on sworn allegations of fact; such grounds necessarily include a *359 showing of standing — that is, a legitimate expectation of privacy in the searched premises.[2]
Placing upon a defendant the burden of asserting an interest in the searched premises at the pretrial stage is fair, sensible and consonant with this court’s long-established view that Fourth Amendment rights are personal. While the People will, of course, have some notion before trial of how the defendant’s possession of the seized contraband is to be proved, it is after all the defendant alone who actually knows his or her connection with the searched area (see, People v Gomez, 67 NY2d 843, 844, supra). It is thus neither unjust nor unreasonable to require that the defendant set forth that interest, protected by the rule that such testimony cannot be used to prove the charges.
Defendant argues that unless standing is afforded to defendants in constructive possession cases, the People are unfairly permitted to assert contradictory positions, in that they contest the defendant’s expectation of privacy before trial but ultimately prove that the defendant had sufficient dominion and control over the area of possession. In fact, there is nothing contradictory about the positions taken by the People. To point out that a defendant has failed to meet the burden of asserting facts showing a legitimate expectation of privacy is not a denial that the defendant had any connection to the premises; it is simply an insistence that the required personal privacy interest be asserted by the defendant, the party whose interest it is, and the one who uniquely knows its nature. The People’s trial proof would not necessarily suffice in all constructive possession cases to demonstrate that a defendant had a cognizable interest in searched premises, even though it proved constructive possession — for instance, where the defendant had abandoned the premises, or secreted property in an area open to the public, or had been permitted only to store belongings temporarily. Indeed, defendant made just such a claim before the Grand Jury. While the trial jury with good *360 reason chose to believe otherwise, there was no anomaly in mandating that the material facts be asserted by the defendant.
Nor does the dilemma of "the innocent defendant who has little or no connection with the place and is accused on the basis of false or mistaken evidence” (dissenting opn, at 369, n 3) support the proposition that all defendants charged with constructive possession should have standing. The policy choice made by this State was to limit the remedy of suppression to defendants whose own rights have been infringed, which reflects the belief that the trial process itself protects the innocent. Accordingly, there is no anomaly endemic to constructive possession cases that requires departure from the long-established rule in this State that a defendant seeking suppression must assert personal standing.
III.
Since Ponder, we have carved out a narrow exception in one particular class of constructive possession cases. In cases where a defendant is charged with possession of a gun based on the statutory presumption found in Penal Law § 265.15 (3), which attributes possession of a gun to the passengers in an automobile simply by virtue of their presence in the car where the gun is found, we have held that the defendant has a right to challenge the legality of the search regardless of whether he or she is otherwise able to assert a cognizable Fourth Amendment interest. We reasoned that fundamental tenets of fairness require that a defendant charged with possession under the statutory presumption be given an opportunity to contest the search (People v Millan, 69 NY2d 514, 520). However, we made clear in Millan that this exception was in no way inconsistent with Ponder, which remains the law (id., at 519).
The Millan decision, as well as a reference in Millan to People v Mosley (68 NY2d 881), have apparently engendered confusion about the scope of the exception articulated in Millan (see, e.g., People v Rada, 141 Misc 2d 218; People v Febus, NYLJ, Aug. 29, 1988, at 18, col 6; People v Williams, 140 Misc 2d 741; People v Ycasa, 140 Misc 2d 114; People v Pagan, 138 Misc 2d 802; People v Martinez, 136 Misc 2d 665) or, put the other way, about the continued vitality of Ponder. The issue is squarely presented in this case, where the Appel *361 late Division read Millan and Mosley to mean that a defendant charged with constructive possession of contraband, although not pursuant to a statutory presumption of possession, must be granted standing to challenge the search that uncovered that contraband. If the Appellate Division is correct, the holding of Ponder is so substantially eroded as to be effectively overruled. There will be few cases where a possessory offense is based neither on a search of the person (in which case there plainly is standing) nor on evidence of constructive possession.
A reading of Mosley and Millan that so drastically undercuts our long-standing view of what is a constitutionally protected interest for purposes of the standing requirement is too sweeping. In Millan we were concerned with the unfairness created by a particular category of cases — those in which the legal fiction of Penal Law § 265.15 (3) was alone both probable cause to arrest and sufficient to satisfy the People’s burden of proof of possession of a gun merely because of the circumstance of the defendant’s presence in the automobile where the weapon was found. The statute was prompted by the frequency of cases in which the People were unable to secure any conviction when a gun was hidden in an automobile with more than one occupant, for under traditional legal principles, the very fact that more than one person had access to the gun generally defeated a charge of constructive possession (see, People v Lemmons, 40 NY2d 505). The broad remedy adopted by the Legislature was, in effect, to place each person in the same position as though the gun had actually been found on his or her person. To deny standing in such circumstances created an anomaly we addressed in Millan, by holding that defendants arrested and charged on the basis of Penal Law § 265.15 (3) have a right to contest the legality of the search of an automobile that the statute transformed through a legal fiction into an extension of their persons.
The unfairness we perceived in Millan is not present in cases where a defendant is charged with constructive possession on the basis of evidence other than the statutory presumption. No presumption is used to secure a conviction. More importantly, unlike presence in an automobile, no single circumstance necessarily suffices to establish a prima facie case against a defendant charged with constructive possession. Instead, the People bear the substantial burden of establishing defendant’s ability and intent to exercise dominion or control *362 over the contraband (compare, 1 CJI [NY] 9.70, with 3 CJI [NY] PL 265.15 [3]).[3]
Indeed, the very opposite may be said of the concern that led us to formulate the Millan exception. The statutory presumption allowed the precise circumstance that had resulted in lack of standing — passenger status — to form the sole basis for conviction. In other constructive possession cases, by contrast, the circumstance that a defendant has an insufficient interest in the premises to claim standing will generally also tend to undermine any charge that the defendant was able to exercise dominion and control over contraband therein. Thus, the Millan exception to the requirement that a defendant who seeks to contest the legality of a search be able to assert a violation of personal rights has no application in this context.
The Appellate Division’s reading of our memorandum decision in People v Mosley (68 NY2d 881, supra) was also too broad. In Mosley, the defendant and his two companions were stopped and frisked. The predicate for Mosley’s arrest was the discovery of a starter’s pistol on the person of one of Mosley’s friends during the course of the search. The arresting officer took Mosley into custody for jointly and constructively possessing the gun. During a later station house search, a pistol was found in Mosley’s own pocket. We concluded that the stop and frisk were unjustified and that no probable cause existed for the subsequent arrest of defendant and station house search that led to discovery of the pistol in Mosley’s pocket. Mosley unquestionably had standing to contest whether the discovery of a gun in his friend’s possession constituted probable cause for his own arrest.[4] There is no parallel to the present case.
In short, no Millan-Mosley "rule” or "principle” restoring automatic standing in constructive possession cases has been established, eroded or jettisoned by this court, despite the contrary assertion in virtually every paragraph of the dissenting opinion.
*363 IV.
There remains for our consideration the question whether Millan should now be extended to permit all defendants charged with constructive possession to claim standing for that reason alone. We think not. To do so would be to depart from Ponder and the cases that have followed it, requiring that a defendant assert the violation of a personal privacy right. To be sure, stare decisis is a matter of judicial policy and not alone reason for adhering to precedent. Nonetheless, the existence of settled doctrine is a powerful argument for the exercise of restraint (see generally, People v Hobson, 39 NY2d 479, 487-490). Before the court departs from a precedent that remains vital and operates effectively, it should be clear that justice is thereby advanced. Here, we find no reason to depart from Ponder to adopt the rule advocated by the defendant and the dissent.
Perhaps most significantly for present purposes, the Ponder rule is more fair and less anomalous than anything they suggest. Given a single search and two defendants, under the dissent’s proposal the defendant who actually possessed contraband might be denied standing to seek suppression unless a legitimate expectation of privacy were asserted, while the defendant who possessed that contraband constructively would automatically be entitled to challenge the search. That same anomaly exists even as to a single defendant: according to the dissent, if charged with constructive possession of drug paraphernalia scattered throughout a room, a defendant automatically has standing to seek suppression, yet if charged with possessing "hypodermic needles both in and beside the bed where he was sleeping and a bag of cocaine on top of which he was lying” (dissenting opn, at 375, referring to People v Rodriguez, supra), defendant must first assert a constitutional interest. Moreover, by looking to the use sought to be made of the seized property, the dissent’s proposal reintroduces the hairsplitting Fourth Amendment distinctions between contraband and "mere evidence” that were repudiated in Warden v Hayden (387 US 294). If the State proposes to charge a defendant with possessing property, in the dissent’s view standing would automatically be granted; but if the value of the property is evidentiary, the same defendant would have to meet the burden of asserting a cognizable interest in the premises.
Nor does the Ponder rule create the unfairness or anomaly that defendant here stands convicted while his girlfriend *364 remains free (dissenting opn, at 367). That result arises because, despite substantial evidence to the contrary, defendant chose to take the position that he had little connection with the searched premises. Had he asserted a similar interest in the premises to that of his girlfriend, the result might well have been otherwise.
As this case has been decided by the Appellate Division and presented to us, only the fact that this is a constructive possession case is asserted as support for defendant’s claim of standing to seek suppression of the contraband. That is simply insufficient under the law.
Accordingly, the order should be reversed and the case remitted to the Appellate Division, Fourth Department, for consideration of the facts and other issues not reached on appeal to that court.

. In a suppression hearing, a defendant may, of course, rely on evidence elicited during the People’s direct case in order to sustain his or her burden of proving standing (People v Gonzalez, 68 NY2d 950, 951).

. The dissent’s suggestion that such a showing can be made retrospectively by parsing the People’s trial proof renders this legislative choice nugatory, and is procedurally awkward. People v Rodriguez (69 NY2d 159) exemplifies the problems posed by such hindsight analysis: there, the defendant pleaded guilty — as is often the case — under one count of a three-count indictment, and a potential witness who had previously spoken to the police was missing at the time of the suppression hearing. An appellate court would have surmised little if anything, in those circumstances, about what type of evidence of possession the People had, or could have used.

. Thus, the Appellate Division erred when it implied that the People’s theory was that defendant constructively possessed the drugs merely because he was present at the time of the search. The People presented ample additional proof of constructive possession.

. Mosley plainly does not stand for the proposition that defendant had standing to litigate the validity of the search of his friend, a third party (dissenting opn, at 371-372, n 6). Such a reading would be openly at odds with Ponder and People v Henley (53 NY2d 403).