OPINION OF THE COURT
Steven W. Fisher, J.
This is a motion by the People to reargue a prior decision of *689 this court suppressing evidence (see, People v Williams, 140 Misc 2d 741). The People contend that the Court of Appeals recent decision in People v Wesley (73 NY2d 351) compels the conclusion that, contrary to the prior holding of this court, none of the three named defendants had standing to contest the seizure of the contraband herein and that, as a result, their suppression motions should have been denied.
The threshold question is whether this reargument motion, made more than 30 days after entry of the orders granting suppression, is time barred. Defendant Williams contends that it is. I hold that it is not.
It is ordinarily true that a motion to reargue may not be made beyond the time within which to appeal from the prior order. This is so because reargument may not be used to extend the time in which to appeal or to revive a right to appeal which has been extinguished.
Where, however, the prior order is still open for review by an appellate court, a motion for reargument will lie, especially when based upon an intervening change in controlling law (see, e.g., Ferrizz v Jahelka, 125 AD2d 537; Foley v Roche, 86 AD2d 887).
In the case at bar, the People timely filed notices of appeal from the orders granting the named defendants’ suppression motions. Those appeals are currently pending before the Appellate Division although they have not yet been submitted. Thus, the instant motion for reargument does not extend the People’s time to appeal, or revive a right to appeal which has expired. It is therefore both timely and proper. I turn, then, to the merits.
The facts here were submitted upon stipulation and were fully set forth in the court’s original opinion (see, People v Williams, 140 Misc 2d 741, supra).
Briefly stated, the three named defendants and one Hilliard Lightfoot were jointly charged with the possession of a quantity of cocaine and other contraband recovered by police who entered Mr. Lightfoot’s apartment under authority of a defective search warrant. Because of the defect in the warrant, the People did not oppose the suppression motion of Hilliard Lightfoot, the legitimate and lawful tenant of the apartment,[1] but argued that the other three defendants lacked standing to *690 challenge the police entry into the premises and the resulting seizure of contraband - because they had each acknowledged that they were merely guests in Mr. Lightfoot’s apartment and had no legitimate privacy interest in it.
Noting that the law of standing in this State was less than entirely clear, I concluded that the three defendants were entitled to challenge the seizure because they had been charged with constructively possessing the contraband jointly with Hilliard Lightfoot who did have standing. This conclusion was based on my interpretation of the Court of Appeals memorandum decision in People v Mosley (68 NY2d 881, cert denied 482 US 914).
In Mosley (supra), police stopped and frisked the defendant and two companions on the street. The frisks revealed nothing on the defendant, but one of his companions, Mackie, was found to be in possession of a starter’s pistol. All three men were arrested for jointly possessing the pistol. A subsequent search of the defendant at the precinct uncovered a loaded and operable weapon in his pocket. Charged only with possession of that weapon, the defendant moved to suppress it as the fruit of an unlawful arrest.
In a brief memorandum, the Court of Appeals held that the conduct of the defendant and his companions on the street had been equivocal and insufficient to justify the initial stop by the police. The court concluded that the weapon, later seized from the defendant incidental to his unlawful arrest, should have been suppressed.
The court, however, added one sentence which, in the minds of many, threw the law of standing into confusion. The court wrote: "Inasmuch as the People rely on the discovery of the starter pistol on Mackie as the basis for the arrest of defendant — that defendant constructively possessed the weapon concealed on Mackie’s person — defendant has standing to contest the frisk of Mackie” (People v Mosley, 68 NY2d 881, 883, supra; emphasis supplied).
Because I was unable to see how the defendant in Mosley (supra) could claim any reasonable expectation of privacy in the person or clothing of his companion, I concluded that Mosley represented an exception to the prevailing reasonable expectation of privacy rule — an exception based on the fact that the defendant had been charged with possessing the starter’s pistol at the time of its seizure jointly with another person — Mackie — who did have standing to complain. It *691 seemed to me that "the Court of Appeals ha[d] come to feel that considerations of fairness require that, in some circumstances, just as possession can be joint and accessorial, so too should be standing to complain” (140 Misc 2d, at 747, supra; see also, People v Pagan, 138 Misc 2d 802 [Sup Ct, Bronx County 1988, Price, J.]; People v Ycasa, 140 Misc 2d 114 [Crim Ct, NY County 1988, Sayah, J.]; People v Febus, Sup Ct, NY County 1988, Failla, J.; People v Lopez, 142 Misc 2d 698 [Sup Ct, Bronx County 1989, Price, J.]; but see, People v Rada, 141 Misc 2d 218 [Sup Ct, NY County 1988, McLaughlin, J.]).
The People now contend that the Court of Appeals recent decision in People v Wesley (73 NY2d 351, supra) demonstrates that this interpretation of Mosley (supra) was incorrect.
In Wesley (supra) narcotics officers obtained a warrant authorizing the search of a house occupied by the defendant’s girlfriend, Jacquelin Glass, and their infant son. When the officers sought entry, the defendant, who was inside, unsuccessfully attempted to bar their way by holding the front door closed. When the officers entered the house, they found and seized a large quantity of marihuana, handguns, and other paraphernalia associated with drug traffic. Also in the house were men’s clothing and toilet articles, photographs of defendant, and personal papers and correspondence bearing the defendant’s name.
Both Glass and the defendant were arrested and charged with possession of the guns and marihuana. Both subsequently testified before the Grand Jury that the defendant never stayed at Glass’s house, that he kept no clothing or property there other than a few stored papers, and that he had no interest in the house but was merely a daily visitor.
Both Glass and the defendant moved to suppress the contraband. Glass’s motion was denied after a hearing. The defendant’s motion, however, was denied without a hearing, the court finding that he had failed to demonstrate standing to challenge the search of the premises. Following a jury trial, both were convicted, Glass on a marihuana charge, the defendant on charges of possessing marihuana and one of the guns.
In separate appeals, the Appellate Division, Fourth Department, first reversed Ms. Glass’s conviction on the ground that the warrant authorizing the search of her home had not satisfied the requirements of Aguilar-Spinelli[2] (People v Glass, 136 AD2d 892).
*692 When the defendant’s appeal reached the same court, the question was whether he too was entitled to attack the now concededly defective warrant or whether, as the trial court had held, he lacked standing to do so. The Appellate Division ruled that the defendant did have standing, not because he had demonstrated a privacy interest in the premises, but rather "because the People [had relied] on the constructive possession of the drugs as the basis for [his] arrest” (People v Wesley, 139 AD2d 946).
On April 4, 1989, a sharply divided Court of Appeals reversed the Appellate Division’s order.
The five-Judge majority held that the hearing court had properly denied Wesley standing to contest the search because he had not asserted a reasonable expectation of privacy in the premises. Moreover, the majority denied the existence of any so-called "Millan-Mosley” rule which would have dispensed with the need for a showing of a privacy interest (People v Wesley, 73 NY2d 351, 362, supra).
The dissenters, however, insisted that there was a "constitutional rule of Millan-Mosley” (People v Wesley, supra, at 370) and that it gave the defendant standing notwithstanding his lack of a privacy interest in the premises because he was charged with possession by virtue of his alleged control over the area in which the contraband was found.[3]
But the majority held that, since People v Ponder (54 NY2d 160), "as a matter of State constitutional law, a defendant seeking to challenge a search and seizure could not rest upon the fact that the People had charged possession, but was required to demonstrate a personal legitimate expectation of privacy in the searched premises” (People v Wesley, supra, at 357). Wesley, the court found, had failed to do so.
The court acknowledged only one narrow exception to this expectation of privacy rule "in one particular class of constructive possession cases” (People v Wesley, supra, at 360). That exception, the court said (at 360), was established in People v Millan (69 NY2d 514), and allows a challenge to a search and seizure regardless of any cognizable Fourth *693 Amendment interest "where a defendant is charged with possession of a gun based on the statutory presumption found in Penal Law § 265.15 (3), which attributes possession of a gun to the passengers in an automobile simply by virtue of their presence in the car where the gun is found”.[4]
The court then sought to correct any misapprehension regarding its holding in Mosley (supra). The court wrote: "We concluded [in Mosley] that the stop and frisk were unjustified and that no probable cause existed for the subsequent arrest of defendant and station house search that led to discovery of the pistol in Mosley’s pocket. Mosley unquestionably had standing to contest whether the discovery of a gun in his friend’s possession constituted probable cause for his own arrest” (People v Wesley, 73 NY2d 351, 362, supra). The court continued: "Mosley plainly does not stand for the proposition that defendant had standing to litigate the validity of the search of his friend, a third party” (supra, at 362, n 4).
The Wesley dissenters found this last assertion to be "flatly contradicted by the language of ** * * Mosley [viz.]: Inasmuch as the People rely on the discovery of the starter pistol on Mackie as the basis for the arrest of defendant — that defendant constructively possessed the weapon concealed on Mackie’s person — defendant has standing to contest the frisk of Mackie’ ” (People v Wesley, supra, at 371-372, n 6; emphasis in *694 original). The dissenters’ view on this point is not without its appeal.
Where the issue is relevant, every criminal defendant has "standing” to complain that his own arrest was not supported by probable cause, that is, that the police did not possess information sufficient to warrant his arrest and that, therefore, evidence obtained as a result of the arrest ought to be suppressed.
The issue of standing, however, is not generally thought to relate to the question of the sufficiency of information supporting an arrest, but rather to the question of whether the defendant has the right to challenge the means by which the police came at that information or gathered other evidence sought to be used against him. The Court of Appeals has now held that Mosley (supra) is to be read only for the proposition that the defendant there had "standing” to challenge the sufficiency of the information prompting his arrest. Thus, Mosley may no longer be seen as a "standing” cause in the usual sense.
This clarification of Mosley (supra) is not without significant ramifications. Suppose, for example, that the unlawful frisk of Mackie had produced, not a starter’s pistol, but a distinctive item — an unusual diamond — which the police recognized as the fruit of a robbery just committed nearby by three as yet unidentified men. Considering the proximity in time and place between the robbery and the stop, and the fact that the three men were walking together, the discovery of the diamond on Mackie might well provide the police with sufficient cause to forcibly detain, or even arrest, all three men. Suppose, further, that, following this detention, each of the men voluntarily made an inculpatory statement, and each was identified as a perpetrator in a constitutionally sound identification procedure.
In these circumstances, Mackie would plainly have standing to challenge the frisk and be entitled to suppression of the diamond as well as his statement and subsequent identification. Under this new reading of Mosley (supra), however, Mosley himself would be in a very different position. He would only have "standing” to argue that the circumstances, including the discovery of the diamond on Mackie, were not sufficient to warrant his detention. He would not have standing to challenge the frisk of Mackie which uncovered the diamond although he himself had been subject to a contemporaneous *695 and equally unlawful stop and frisk by the very same officers. The diamond itself, together with the resulting evidence, the statement and the identification, would all be admissible against Mosley.
Thus, in. such a case, the consequences of the unlawful police conduct would turn solely upon which of the perpetrators happened to be physically carrying the contraband which they each jointly, and in contemplation of law, equally possessed.
The case at bar represents a situation more frequently encountered, viz., the alleged joint possession of narcotics in an apartment. Again, under this new interpretation of Mosley (supra), the consequences of unlawful police conduct will depend entirely upon whose apartment the perpetrators elect to use. There is an element of fortuitousness here that some may find disturbing.
Moreover, if, as the Wesley majority points out, ”[t]he exclusionary rule has as an objective the social benefit of deterring unlawful police conduct” (People v Wesley, supra, at 354) some may seriously question whether that purpose is served by the court’s holding. For instance, what is there now to deter police from acting on the merest suspicion of drug activity by raiding apartments in drug-prone areas, confident in the knowledge that, should they discover illegal narcotics, they can successfully prosecute everyone inside the apartment save only the lawful tenant?
Some, who feel that the exclusionary rule exacts too high a price on the interests of society, will undoubtedly welcome the approach taken by the Court of Appeals. Others will take a very different view. What is plain, however, is that, after some and 2¥i years, the Court of Appeals has brought clarity into this State’s law of standing.
In any event, because the prior orders of this court remain open for appellate review and because none of the three named defendants has made any assertion of a personal legitimate expectation of privacy in the apartment here in question, the People’s motion for reargument should be granted and, upon reargument, the suppression motions of each of the three named defendants should be denied for lack of standing to complain.

. Lightfoot’s motion was granted and the People did not appeal nor do they now seek reargument with respect to him.

. Aguilar v Texas, 378 US 108; Spinelli v United States, 393 US 410.

. Judge Kaye, writing for the majority, acknowledged that "[t]he Millan decision, as well as a reference in Millan to People v Mosley * * * have apparently engendered confusion” (People v Wesley, 73 NY2d 351, 360). Some con fusion at the trial level would seem inevitable when Judges of the Court of Appeals dispute the very existence, much less the proper scope, of a "constitutional rule”.

. This exception is inapplicable to the case at bar since the People have specifically disavowed reliance on any statutory presumption. Nevertheless, it is worthy of note that, aside from the so-called "gun-in-a-car” presumption, there are other widely used statutory presumptions that attribute possession of contraband to persons because of their position relative to it. Penal Law §20.25 (1), for example, provides in pertinent part: "The presence of a controlled substance in an automobile * * * is presumptive evidence of knowing possession thereof by each and every person in the automobile at the time such controlled substance was found”. And subdivision (2) of the same statute provides: "The presence of a narcotic drug * * * in open view in a room * * * under circumstances evincing an intent to • unlawfully mix, compound, package or otherwise prepare for sale such controlled substance is presumptive evidence of knowing possession thereof by each and every person in close proximity to such controlled substance at the time such controlled substance was found”.
It remains to be seen whether, in a case in which the prosecution relies on either of these statutory presumptions, the principles of Millan will allow a right to challenge a seizure even in the absence of any assertion of a cognizable Fourth Amendment interest (see, e.g., People v Castillo, NYLJ, July 7, 1989, at 24, col 2 [Sup Ct, NY County 1989, Weissberg, J.] [holding that standing is conferred by the prosecution’s reliance on the presumption contained in Penal Law § 220.25 (2)]).