OPINION OF THE COURT
Martin Marcus, J.
In this case, the defendant is charged with violating Penal Law § 270.20, unlawful wearing of a body vest, a felony offense apparently prosecuted rarely since its enactment in 1984. This crime occurs when a person commits a violent felony offense "while possessing a firearm and in the course of and in furtherance of such crime he wears a body vest.” (Penal Law *305 §270.20 [1].) Paradoxically, in this case the violent felony offense the defendant is alleged to have committed "while possessing a firearm” is possessing a firearm. That is, he is charged with committing the crime of criminal possession of a weapon in the third degree "while” possessing a firearm, and with furthering the possession of the firearm by wearing a body vest. The question raised is whether such conduct constitutes a violation of the statute.
The defendant was indicted by the Grand Jury of Bronx County on April 6, 1992. In addition to the crime of unlawful wearing of a body vest, he is charged with two counts of criminal possession of a weapon in the third degree in violation of Penal Law § 265.02 (4) (possession of a loaded firearm), one count of criminal possession of a weapon in the third degree in violation of Penal Law § 265.02 (3) (possession of a defaced firearm), and two counts of criminal possession of a weapon in the fourth degree in violation of Penal Law § 265.01 (1) (possession of a firearm). He now makes an omnibus motion for inspection of the Grand Jury minutes and dismissal or reduction of the charges in the indictment, and for suppression of physical evidence.
The defendant’s motion to inspect the Grand Jury minutes is granted to the extent that the court has inspected and reviewed the minutes.[1] According to the record before the Grand Jury, two police officers arrested the defendant and another person in an apartment. In open view in a bedroom of that apartment, two loaded firearms — -a silver .357 Colt revolver and a defaced black Burgo automatic — lay on a bed, boxes of ammunition sat on top of a dresser, and bullets were "scattered about * * * all over the place.” When the defendant was searched incident to his arrest, he was discovered to be wearing a body vest. Examined by the Ballistics Squad of the New York City Police Department, the vest proved to be made of 10 layers of bullet resistant material, which when tested "provided protection from three shots to the front and three shots to the back panel * * * of .38 special calibre ammunition.”
This evidence was sufficient to support all but count five of the indictment, and his motion to dismiss those other counts, or in the alternative, to reduce the charges they contain, is *306 denied.[2] The fifth count of the indictment charges the defendant with unlawful wearing of a body vest. That crime is committed when an individual, "when acting * * * alone or with one or more other persons * * * commits any violent felony offense defined in section 70.02 while possessing a firearm and in the course of and in furtherance of such crime he wears a body vest.” (Penal Law § 270.20 [1].) Thus, "[t]he basic elements of the [crime] are wearing the body vest, possessing a firearm, and committing a violent felony offense.” (Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 270.20, at 480.) At first glance, all three elements appear to be present here: there is evidence that the defendant was wearing a body vest,[3] that he possessed —not just 1, but 2 — loaded firearms, and that he committed a violent felony offense — criminal possession of a weapon in the third degree.[4]
The issue raised by the defendant’s motion to dismiss is whether criminal possession of a weapon in the third degree, a violation of Penal Law § 265.05 (4) committed by the possession of a loaded weapon, is a proper predicate for the crime of unlawful wearing of a body vest. On the face of the statute, the answer is clearly yes. In enacting Penal Law § 270.20 (1), the Legislature explicitly criminalized the wearing of a body vest while possessing a weapon and in the course and in furtherance of "any violent felony offense defined in section 70.02,” and Penal Law § 265.05 (4) is one of the violent felony offenses explicitly enumerated in Penal Law § 70.02.
*307 While the Legislature’s reference in section 270.20 to "any violent felony offense” appears to be unambiguous and all inclusive, the defendant argues that the second element of the crime — that the predicate violent felony offense be committed "while possessing a firearm” — precludes a prosecution in which the predicate is criminal possession of a weapon in the third degree. In such a prosecution, both the first and second elements are essentially identical, that is, by the single act of possessing a loaded pistol a person both commits the violent felony offense of criminal possession of a weapon in the third degree, and does so while, as well as by, possessing a firearm. Assuming that the Legislature could not have intended this redundancy, the defendant maintains that it meant, sub silentio, to exclude from the coverage of the statute the wearing of a body vest during the commission of this particular violent felony offense.
In People v Fonseca (36 NY2d 133 [1975]), the defendant, while fleeing from the police in a stolen car, struck a taxicab and injured two of its occupants. Based upon this conduct, the defendant was convicted after trial of several crimes including felony assault. Defined in Penal Law § 120.05 (6), felony assault is committed when a person causes physical injury "[i]n the course of and in furtherance of the commission or attempted commission of a felony”. The predicate felony for the defendant’s conviction, that is, the crime in furtherance of which the physical injury occurred, was criminal possession of stolen property, the stolen property being the car in which the defendant had been driving.
On appeal, the defendant sought to analogize felony assault to felony murder, defined in Penal Law § 125.25 (3), which is committed when death, rather than physical injury, is caused in the course and in furtherance of one of a limited number of specifically enumerated predicate felonies. Arguing that all of the possible predicates for felony murder were violent crimes,[5] the defendant maintained that the permissible predicates for felony assault should also be limited to violent felonies, even though the definition of felony assault in section 120.05 (6) did not expressly contain any such limitation.
Rejecting the analogy, the Court noted that, "The legislative *308 intent may be inferred from the specific language of the statute. On its face, the language of the statute is clear and unambiguous * * * The statute does not specify that only felonies of a violent nature * * * may be the basis for a felony assault conviction.” (People v Fonseca, 36 NY2d, supra, at 135.) Relying upon these observations, and noting that different language and policy considerations governed the felony murder statute, it held that any felony — violent or not — -was a proper predicate for felony assault. Here, too, the language of the statute is "clear and unambiguous” and appears to permit for no exceptions. Merely because possessing a loaded weapon satisfies 2 of the 3 elements of the crime is insufficient to establish that the Legislature intended to exclude criminal possession of a weapon as a predicate when it said "any” violent felony offense would do.
Ironically, however, it appears that the exception the first two elements do not make is effectively created by the third. This third element is satisfied when a person wears a body vest, and does so "in the course of and in furtherance of’ the predicate violent felony offense. This element codifies the Legislature’s purpose in enacting Penal Law § 270.20, which one of its principal sponsors has said "addresses the serious threat posed to the safety of civilians, and police authorities alike, when confronted by that criminal element seeking to enhance the successful perpetration of their crime by the wearing of bullet resistant body armor.” (Letter of Apr. 2, 1984, of Assemblyman John C. Dearie, submitted to Gov Mario M. Cuomo in support of Assembly Bill No. 8895-A.)
How a body vest may be worn in furtherance of a violent felony like robbery in the first degree is easily understandable, since it can protect the robber should the victim, a bystander or the police respond to his conduct with deadly physical force.[6] It is even comprehensible how the wearing of a body vest could further the commission of the crime of criminal possession of a weapon in the second degree (Penal Law § 265.03). That crime requires not only possession of a loaded firearm, but also an "intent to use the same unlawfully *309 against another.” (Id.) Such an intent is enhanced, and thus furthered, when the weapon’s possessor is emboldened to use it by donning a bullet proof vest.
While in these ways the wearing of such a vest may further the actual or contemplated use of a firearm, it cannot in any conceivable manner advance the simple act of possessing one. Absent an intent to use the firearm, its mere possession is an entirely passive act which is not furthered by bullet proof attire.[7] As a result, in this case — and perhaps any other in which criminal possession of a weapon in the third degree is the predicate — a violation of Penal Law § 270.20 cannot be established.[8] Accordingly, the fifth count of the indictment is dismissed.
The other grounds upon which the defendant seeks dismissal of the indictment are without merit. In particular, the minutes reveal that a quorum of grand jurors was present during the proceedings and at the time the Assistant District Attorney instructed the Grand Jury on the law, and that it was instructed that only those grand jurors who had heard all of the evidence could participate in voting on the matter. The proceedings were not defective within the meaning of CPL 210.35, and the defendant’s motion to dismiss the remaining counts of the indictment on those grounds is denied.
The defendant also seeks the suppression of the guns and ammunition recovered from the bedroom in the apartment and the body vest discovered under his outer clothing and seized from his person. He alleges, however, that he was only *310 a visitor in the apartment, which belonged to his codefendant, and that the police entered the apartment without permission or probable cause and arrested and searched him without a lawful basis. There is, of course, no question of the defendant’s standing to contest the search of his person. From his own allegations, though, it is evident that he has no right to challenge the police entry into the apartment and the seizure of the property they found in it.
The defendant assumes that the People are relying on a statutory presumption to establish his possession of the guns and ammunition, and appears to derive his claim for standing on that basis. (See, People v Wesley, 73 NY2d 351 [1989].) In fact, the charge to the Grand Jury did not include an instruction that it could presume possession of the weapons from his presence in the apartment, and no such statutory presumption exists. (People v Chandler, 121 AD2d 644 [2d Dept], lv denied 68 NY2d 913 [1986]; compare, CPL 265.15 [1] [presuming persons occupying room or dwelling possess machine gun present therein]; 265.15 [2] [presuming persons occupying stolen vehicle possess weapon present therein]; 265.15 [3] [presuming persons occupying vehicle possess firearm present therein].)
Since standing no longer arises automatically from a charge of possession (see, People v Ponder, 54 NY2d 160 [1981]), and since the defendant has not alleged facts in support of a reasonable expectation of privacy in the apartment, a Mapp hearing will be held before trial limited to determining the lawfulness of the discovery and seizure of the body vest.

. The defendant’s application for the release of the Grand Jury minutes to his attorney is denied as being unnecessary for the determination of his motion to dismiss the indictment.

. In addition, the defendant’s motion to dismiss these counts of the indictment on the ground that the District Attorney’s legal instructions to the Grand Jury were insufficient is denied. The instructions were not defective within the meaning of CPL 210.35.

. The ballistics report presented to the Grand Jury indicates, and the defendant does not contest, that the vest allegedly worn by him meets the requirements set forth in Penal Law § 270.20 (2), which defines a "body vest” as "a bullet-resistant soft body armor providing, as a minimum standard * * * at least seven layers of bullet-resistant material providing protection from three shots of one hundred fifty-eight grain lead ammunition fired from a .38 calibre handgun at a velocity eight hundred fifty feet per second.”

. The count of the indictment charging the defendant with unlawful wearing of a body vest does not itself specify the violent felony offense upon which it is predicated. However, after defining the body vest crime, the prosecutor presenting the case to the Grand Jury instructed it that "section 265.02, subdivision four, is in fact a violent felony offense as defined in section 70.02,” and other than establishing the presence of the two loaded firearms in the bedroom, the People offered no evidence of any other type of violent felony offense.

. The predicate crimes specified in Penal Law § 125.25 (3) are robbery, burglary, kidnapping, arson, rape in the first degree, sodomy in the first degree, sexual abuse in the first degree, aggravated sexual abuse, escape in the first degree and escape in the second degree.

. The Commentary to the statute notes that, "Supporters of the law argued that the wearing of the body vest 'creates a greater danger to the public and police officers responding because when criminals have the vest on they believe they are invincible and are less likely to surrender without a fight.’ N.Y. Times, March 27, 1984, at p. 1, col. 1.” (Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 270.20, at 480.)

. Note that if the purpose or result of an act is to permit possession to continue, it may be said to further such otherwise "passive” possession. For example, in People v Fonseca (36 NY2d 133 [1975], supra), the felony assault case described above, the defendant caused physical injury by striking a taxicab while driving a stolen vehicle. In that case, because the accident occurred while the defendant fled from the police, the People could logically argue that the physical injury was caused "in furtherance of” his continued criminal possession of the stolen vehicle. Here, though, neither evidence nor logic supports a claim that wearing the vest contributed to the defendant’s continued possession of the weapons found in the apartment.

. When a gun is loaded there is reason to believe that its possessor intends to use it, and for that very reason the law permits a trier of fact to presume an intent to use a firearm from the fact of its possession. (Penal Law § 265.15 [4]; People v Higdon, 162 AD2d 957 [4th Dept], lv denied 76 NY2d 893 [1990].) Similarly, a trier of fact might also reasonably infer that one who wears a body vest expects, and therefore intends, to use a weapon then in the wearer’s possession. In this case, however, possession with such an intent was not the predicate upon which the Grand Jury charged the defendant with unlawful wearing of a body vest.