■ In the Matter of THOMAS T. MOORE, Appellant, v THOMAS A. CONSTANTINE, as Superintendent of the New York State Police, Respondent. [594 NYS2d 395] —Mikoll, J. Appeal from a judgment of the Supreme Court (Cheeseman, J.), entered September 18, 1991 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent terminating petitioner's employment.

Petitioner was a member of the State Police. Charges were instituted against him in February 1989 by respondent. Under charges I and III, it was alleged that petitioner had violated State Police regulation § 8.44 by committing petit larceny in violation of Penal Law § 155.25. Pursuant to charges II and IV, it was alleged that petitioner was guilty of misconduct in violation of State Police regulation § 8.41 (a) (1). Petitioner's request for a negotiated administrative plea was rejected by respondent. After a hearing was conducted, petitioner was

found guilty as charged. The Hearing Board recommended dismissal from the force. Respondent rejected petitioner's request to accept a previously negotiated plea bargain under which petitioner had agreed to waive his right to a hearing, plead guilty and receive a 60 days' suspension, 180 days' probation, a letter of censure and transfer to a different troop. Petitioner was accordingly dismissed, effective December 5, 1990. Petitioner then initiated this CPLR article 78 proceeding to review and set aside respondent's determination. Supreme Court dismissed the petition and petitioner now appeals.

On this appeal, petitioner contests (1) the search of his personal locker and the seizure of evidence therefrom, which was admitted in evidence at the hearing, as being in breach of his rights under the 4th Amendment, (2) respondent's withdrawal of the negotiated penalty agreement, (3) the failure to implement the State Police's affirmative action plan, (4) the denial to petitioner of access to his personnel file, and (5) the imposition of the penalty of dismissal as excessive.

The charges arose as the result of a series of thefts at one of the State Police barracks. The sum of $30 was found missing from a collection envelope tacked to the barracks' bulletin board to collect funds for an officer who had lost his wife and child in an accident. Additional money was taken from Trooper Arthur Ellis' wallet which he had left in the men's locker room at the barracks. At Station Commander Maurice Sullivan's instruction, a trap was set to ensnare the thief. A $20 bill was treated with gentian violet, tucked into a $10 bill and put into Ellis' identification and shield holder, which was then placed in the pocket of Ellis' jeans, and left in the barracks' locker room. On December 10, 1989, two days later, the $20 bill was found to be missing. Traces of violet stains were found that day on the sink, urinal and on paper towels in the men's room at the barracks. On December 11, 1989, Sullivan interviewed several troopers including petitioner, who had been on duty on December 10, 1989. A search of troopers' lockers, opened by Sullivan with a master key, disclosed in petitioner's locker signs of a purple stain on petitioner's uniform pants and on a white handkerchief found in the trouser pocket thereof. The forensic laboratory confirmed gentian violet stains on the handkerchief and a stain consistent with the mark of gentian violet on petitioner's uniform trousers. Petitioner had informed Sullivan on December 10, 1989 that "he had gotten into something at the station" which he could not wash off his hands. Petitioner

showed Sullivan his hands which were red and irritated from scrubbing, with a discernible purple speck on one hand.

Petitioner was confronted by Sullivan with his suspicions that petitioner had committed the thefts. Petitioner made no statement but, shortly thereafter, took a leave of absence to participate in a 30-day alcohol rehabilitation inpatient treatment program. Upon petitioner's return, he was interviewed on January 29, 1990 by Zone Commander Richard Lynch and requested to make a statement. Petitioner admitted that he had taken the $20 bill from Ellis' identification holder and that he "probably took money" from the contribution envelope on the bulletin board. He claimed his memory of the incidents was vague due to his contemporaneous alcohol abuse. Petitioner also related that he had found himself in possession of money he could not account for after going to put money in the contribution envelope and he concluded that he must have taken the money. Sergeant Joanne Lutz testified at the hearing that all sergeants have access to lockers by a master key which they obtain from Lynch and that they open the lockers to obtain evidence and to retrieve related paperwork, as needed.

Addressing *seriatim* petitioner's challenges to the determination terminating petitioner's employment, we conclude that the seizure of evidence from petitioner's locker did not violate his rights under the 4th Amendment. In order to be entitled to assert a violation of the 4th Amendment, petitioner must establish that he possessed a reasonable expectation of privacy as to the searched premises *(see, California v Greenwood,* 486 US 35, 39; *People v Wesley,* 73 NY2d 351, 358-359). The record fails to support petitioner's contention of a right of privacy as to his locker. Petitioner, as a trooper, had no reasonable expectation of privacy from his superiors who routinely obtained access to the work-related contents of petitioner's locker, taking needed documents and evidentiary material and checking firearms left therein. The right to privacy in the workplace asserted herein must bend to the superior governmental-societal interest of efficiency in the State Police. All public employees, especially police officers, have a diminished expectation of privacy in the workplace *(see, Matter of Caruso v Ward,* 72 NY2d 432, 439).

Petitioner contends that respondent's withdrawal from the negotiated penalty agreement of April 19, 1990 was error, citing *Matter of Chaipis v State Liq. Auth.* (44 NY2d 57, 64). Petitioner asserts that he admitted the thefts in reliance upon the agreement and that the rejection of it by respondent

prejudiced him in that his statement was then used against him at the hearing. Addressing the contention that the statement was extracted from petitioner in exchange for the agreement, we note that the statement was elicited as part of the investigation of the thefts at the barracks and before any agreement was negotiated. As a trooper, petitioner was required to answer the investigating officer's questions truthfully or face additional disciplinary sanctions. We therefore find petitioner's argument to be specious.*

Petitioner contends that he was denied due process of law in that he was not given the opportunity to inspect his personnel records and to respond to information contained therein before the penalty of dismissal was imposed. We disagree. Petitioner had ample opportunity to address this matter. He was given due notice in the charges issued against him that his employment record would be subject to review. Petitioner, however, never requested access to this data until after the issuance of respondent's determination. Having failed to respond, petitioner has waived his right to object on this ground *(see, Matter of Segrue v City of Schenectady,* 76 NY2d 758, 759).

Petitioner's contention that the penalty of dismissal was disproportionate to the offense is without merit. Dismissal is an appropriate penalty for a police officer found guilty of stealing *(see, Matter of Alfieri v Murphy,* 38 NY2d 976). The gravity of the charges against petitioner fully justifies the penalty of dismissal.

Weiss, P. J., Yesawich Jr., Crew III and Casey, JJ., concur. Ordered that the judgment is affirmed, without costs. *[See,* 151 Misc 2d 1048.]

---

* Petitioner's contention that the State Police affirmative action plan was not followed as to him is raised for the first time on appeal; the issue is therefore not reviewable *(see, Matter of Hopkins v Blum,* 58 NY2d 1011, 1014).