Hancock, Jr., J.
(dissenting). It is basic that under our State and Federal Constitutions all evidence obtained as a direct result of an unlawful invasion by the State must be suppressed (see, e.g., Wong Sun v United States, 371 US 471, 485; People v Stith, 69 NY2d 313, 317-318). Here, the police concededly entered and searched the apartment illegally and, as a direct result of that illegality, seized drugs, drug paraphernalia and a weapon. The courts below, however — instead of applying the exclusionary rule to all of the illegally obtained evidence — have suppressed only the drugs and have *864 absolved the State from the consequences of the illegal police conduct with respect to the drug paraphernalia and the weapon. The justification offered for the obvious disparity— acknowledged by the Appellate Division to be an "apparent anomaly” (183 AD2d 500, 501) — is found in an unprecedented application of the standing rule, not as a threshold bar to the challenge of the illegality but as a means of shielding the State from what would otherwise be the legal consequences of that illegality: suppression of the evidence by operation of the exclusionary rule. The majority now approves this result. Because I am convinced that this is a misuse of the standing doctrine which results in a deprivation of defendant’s State and Federal constitutional rights and defeats the very purpose of the exclusionary rule, I dissent.
The doctrine of standing in challenges to illegal entries and searches is a judicially created rule "that — recognizing the rights protected by the Fourth Amendment as personal rights —limits invocation of the exclusionary remedy to persons whose own protection has been infringed by the search and seizure” (People v Wesley, 73 NY2d 351, 355 [emphasis added]). Standing is a threshold determination as to "who is, or should be, entitled to enforce the prohibition against unreasonable searches” (id., at 355). In cases where the defendant lacks standing the challenge is dismissed and no determination is made as to the legality of the police conduct (see, e.g., Wesley, supra; People v Ponder, 54 NY2d 160).
The distinction between this case and cases such as Wesley and Ponder, of course, is that here the critical threshold determination has been made that defendant has standing to contest the violation of his constitutional rights — i.e., defendant is a person who has been a victim of the unlawful police conduct and is, therefore, "entitled to enforce the prohibition against unreasonable searches and seizures” (Wesley, supra, at 355). The Appellate Division has held that defendant "had standing to challenge the search, this because the People’s case was dependent upon the so-called 'room presumption’ of Penal Law § 220.25 (2), and that the lawfulness of the search should therefore have been decided on the merits” (People v Tejada, 171 AD2d 585). This determination is not questioned. Indeed, it is the law of this case.
Likewise, it is law of the case that the police entered the apartment in violation of defendant’s constitutional rights to be free from illegal entries and searches. On remand, Supreme Court concluded that "no exigent circumstances existed to *865 justify the police entry” and that "the officers had no legal basis to enter the premises at issue without a warrant”. The Appellate Division’s affirmance on this point is not in issue.
Despite the conclusive holdings that defendant is a person entitled to contest the police conduct and that the police entry infringed his constitutional rights, two of the three items found in open view as a result of that entry may be received in evidence against him. The reason, we are told, lies in a new standing rule — one that makes standing depend not on who is or should be entitled to enforce the prohibition against an unlawful warrantless entry but on what the police find as a consequence of that entry. If the unlawful entry has led to an item covered by a statutory presumption (e.g., Penal Law § 220.25 [2]), the court must suppress it. If the illegally discovered item is not covered by a presumption, the illegality can be ignored.
No logical reason or explanation is or can be offered for what the Appellate Division has understandably characterized as an anomaly. The wrongful conduct by the police is the same, whether it resulted in the discovery of drugs or drug paraphernalia. What defendant has challenged as violative of his constitutional rights is the single act of the police in wrongfully entering the apartment without a warrant. It is not the separate seizures of the various items which are questioned; for all three items were in plain view and could properly have been seized if the entry had been lawful. The illegality of the police entry and the causal connection between that entry and the subsequent seizures are identical.
The only basis offered for applying the exclusionary rule for one item, but not for the others, is the Court’s determination not to unwarrantedly "extend the narrow exception of People v Millan (69 NY2d 514, 518-519)” (majority mem, at 863). The consequence of this concern for confining Millan is the creation of a new standing rule which depends not on a threshold determination of whether the person has been a victim of the unlawful police conduct (see, Jones v United States, 362 US 257, 261), but on a post hoc evaluation of the property the police have illegally discovered. We now have a rule which, in effect, says that the defendant may have "standing for this item, but not for that because one is covered by a presumption and the other is not”. But whether a particular item is covered by a presumption and is, therefore, subject to the exclusionary rule is an extraneous factor having no connection with the extent of the police misconduct or its conse *866 quences on the defendant, with the seriousness of the crime charged, or with any of the policies or purposes relevant to the exclusionary rule and its enforcement in a given case. Thus, the significant question of whether a defendant’s constitutional rights under the Fourth Amendment and article I, § 12 of the State Constitution will be protected now depends not on differences material to policy considerations or to the conduct of the police or the defendant, but on legal distinctions which bear no relationship to these matters.
A holding which parses the effect of the exclusionary rule on such legal niceties and thus deprives a defendant of his constitutional rights defeats the purpose of the rule. In People v Bigelow (66 NY2d 417), this Court declined to apply the good-faith exception to the exclusionary adopted by the Supreme Court in United States v Leon (468 US 897). In so doing, we stated that "if the People are permitted to use the seized evidence, the exclusionary rule’s purpose is completely frustrated, a premium is placed on the illegal police action and a positive incentive is provided to others to engage in similar lawless acts in the future” (Bigelow, supra, at 427 [emphasis added]).
The unquestioned importance of deterring police misconduct and discouraging "similar lawless acts in the future” (id.) compelled our adherence to the exclusionary rule in Bigelow where the police claimed that they acted lawfully and proceeded in good faith. These same considerations, I believe, cannot but operate more powerfully in a case such as this where the police misconduct is conceded.
The police have violated defendant’s rights in a warrantless entry. Established law and the "fundamental tenets of fairness inherent in New York criminal jurisprudence” (Millan, supra, at 520) mandate the exclusion of all "materials obtained either during or as a direct result of [that] unlawful invasion” (Wong Sun, supra, at 485). By misapplying the standing doctrine to permit the State to employ the fruits of illegal police conduct to prosecute the defendant, the Court today further erodes the effectiveness of the exclusionary rule —a rule that has served as the only meaningful method of controlling police conduct (see, Mapp v Ohio, 367 US 643, 652-653).
Chief Judge Kaye and Judges Simons, Titone and Bellacosa concur; Judge Hancock, Jr., dissents and votes to reverse in an opinion; Judge Smith taking no part.
Order affirmed in a memorandum.